

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 22, 1952

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1563

Re: Authority of the Comp-
troller to promulgate
a regulation allowing
tax deductions to offset
estimated non-highway use
of special fuels in LPG
delivery trucks.

Dear Sir:

Your request for an opinion of this office reads:

"We desire the opinion of your office regard-
ing the legality of a proposed method of accounting
for the tax imposed by Section 14, Article 7065b,
Vernon's Annotated Civil Statutes upon the highway
use of 'Liquefied Gas' (Butane-Propane) and 'Other
Liquid Fuels' (Diesel Fuel), which became effective
September 1, 1951. These two products are further
defined in Section 1 of the law as 'Special Fuels'.

"The law imposes the tax upon the USE, or the
DELIVERY INTO A FUEL TANK FOR USE, of such fuels in
propelling a motor vehicle upon the public highway
of Texas, and places the responsibility for report-
ing and paying over the taxes upon user-dealers.

"'User-dealer' is defined in Section 1 of the Act
as (1) any distributor, dealer or other person selling
and delivering special fuels in this State into the fuel
tank of any motor vehicle for use in propelling said
motor vehicle upon the public highway of Texas; . . .
and (2) shall also mean and include any distributor,
dealer or other person who shall acquire any special
fuel tax free and USE IT OR DELIVER IT INTO A FUEL TANK
FOR USE to propel motor vehicles operated by said dis-
tributor, dealer or other person upon the public high-
way of Texas.

"It is the second classification - the user-dealers
who acquire liquefied gas and use it or deliver it into

the fuel tanks of their own vehicles for use on
the highway - with whom we are here concerned.

"Because of the expense and burden of in-
stalling separate fuel tanks on each delivery
vehicle, these user-dealers, who deliver their
commercial cargos of LPG products by means of
pressure pumps which are operated by the same
motor (and fed by the same fuel tank) which al-
so propels the tank truck over the highway, have
urged the Comptroller to calculate - from a series
of pump-off tests made on the various size and
type vehicles operating in Texas - the overall
average gallonage that would be necessary to pump
off quantities of 100 gallons, 250 gallons, 500
gallons and 1000 gallons of the cargos and that
the Comptroller authorize such user-dealers to
deduct the average gallonage determined in such tests
for each such unit of delivery from their monthly tax
remittances to the State. They point to the second
paragraph of Section 14(a) of the Act which provides
'it is the intent and object of this section that the
tax or taxes imposed herein on special fuels, as that
term is defined, shall be paid by persons using or
consuming said special fuels to generate power for the
propulsion of motor vehicles upon the public highway
of this State', and suggests that Section 23 of the
Act, vests the Comptroller with sufficient regulatory
powers to permit such tax accounting methods.

"In further pursuance of the request, user-dealer
members of the Texas Butane Dealers Association have
made actual pump-off tests from 37 various types de-
livery tank vehicles, namely, International, GMC, Ford,
Chevrolet, and Dodge trucks. The quantities consumed
in pumping off 1000 gallons of the cargo in such tests
ranged from 7/10th of a gallon used in one truck to
2.62 gallons used in another truck. The average con-
sumption in the different make trucks ranged from 1.01
gallons average in 8 Chevrolets to 1.56 gallons average
in 5 International trucks, and about the same variation
was reflected in different vehicles of the same make.
Separate tests from the same truck reflected various
amounts of consumption under similar conditions. From
these tests it appears obvious that the establishing of
any mean or average pump off allowance for all trucks,
or the establishing of any table of mean or average
allowances for the different size or make of trucks would

necessarily have to be based on estimate or guesswork.

"It is likewise obvious that such user-dealers are presently paying taxes on fuel consumed in such pumping operations which would be exempt from taxation under the law if such fuel could be accurately measured, or could be supplied from separate fuel tanks, though the latter remedy may be economically inexpedient.

"In reviewing the request we are forced to the conclusion that any regulation promulgated to permit payment of the tax on an estimated basis because of individual cases of hardship would be inconsistent with the law which appears to be supported to some extent by your Opinion No. O-2381, holding that the Comptroller will not be required to approve any refund claim based upon a mere estimate or guesswork by the claimant as to the amount of motor fuel used. The Texas Butane Dealers Association, however, has urged that the question be submitted to you.

"The opinion of your office is therefore respectfully requested as to whether or not Section 23 of the Motor Fuel Tax Law, above referred to, vests the Comptroller with sufficient authority to promulgate a regulation that would legally permit the deductions described above from tax remittances to cover non-highway use of fuel when such deductions must be based on an estimate of the quantity so used. This department has made no departmental construction concerning this question other than above set out. There is no litigation pending that will determine the answer to this question."

In answering the question presented, we have assumed that the use of the fuel described in your request is not for the propulsion of a motor vehicle on the public highways of this State and would, therefore, not be subject to the tax if delivered into a separate fuel tank.

Tax deductions or refunds are in the nature of an exemption and under the general rule must be strictly construed. 51 Am. Jur. 502, Taxation, Sec. 495. It has been held that the right of a claimant to make an application for a tax refund is statutory and that the procedure set out in the statute authorizing such refund must be strictly complied with in order to entitle the claimant to that right. Att'y Gen. Ops. V-1487 (1952); V-721 (1948); O-6363 (1945); O-6195 (1944); Armstrong v.

Driscoll Construction Co., 110 P.2d 651 (Colo.Sup. 1941).

Article 7065b-23, V.C.S., provides in part:

"It is hereby made the duty of the Comptroller to collect, supervise, and enforce the collection of all taxes, penalties, costs, and interest due or that may become due under the provisions of this Article, and to that end the Comptroller is hereby vested with all the power and authority conferred by this Article. Said Comptroller shall also have the power and authority to promulgate rules and regulations, not inconsistent with this Article or the Constitutions of this State or the United States, for the enforcement of the provisions of this Article and the collection of the revenues levied hereunder."

Subdivision (a) of Article 7065b-14, V.C.S., provides in part:

"There is hereby levied and imposed an excise tax of Four Cents (4¢) per gallon on all liquefied gas used, or delivered into a fuel tank for use, in propelling a motor vehicle upon the public highway of Texas, and Six Cents (6¢) per gallon on all other liquid fuels used, or delivered into a fuel tank for use in propelling a motor vehicle upon the public highway of Texas, and every user-dealer who sells and delivers liquefied gas or other liquid fuels into a fuel tank or tanks used to supply fuel for the propulsion of any licensed motor vehicle or any other motor vehicle being operated or intended to be operated upon the public highway of this State shall, at the time of such sale and delivery, collect the said tax at the rate or rates imposed upon the purchaser or recipient of said special fuels, in addition to his selling price, and shall report and pay to the State of Texas the tax so collected at the time and in the manner as herein provided. Every user-dealer shall likewise report and pay to the State of Texas, the tax at the rate or rates imposed hereinabove on each gallon of liquefied gas or other liquid fuels, hereinafter referred to as special fuels, acquired in any manner tax free by said user-dealer and thereafter used, or delivered into a fuel tank for use, in propelling a motor vehicle upon the public highway of Texas." (Emphasis added throughout).

The rule with regard to the authority of an agency to make rules or regulations is stated in Volume 1 of Texas Jurisprudence Supplement at page 101:

"A settled doctrine of Constitutional Law forbids the delegation of legislative powers unless express warrant therefor, in some particular situation, is to be found in the constitution. Accordingly the Legislature cannot empower an agency to make laws. But rule-making authority may be conferred upon an agency, and this has often been done. Express authority to adopt rules and regulations may be given by the words of the statute. Implied authority exists, it seems, when the adoption of rules and regulations is necessary to accomplish the purpose of the statute. So where a statute expressly authorizes an agency to regulate an industry it impliedly authorizes the adoption of regulations to that end.

"When such authority, express or implied, has been conferred upon an agency, it may make reasonable rules and regulations, proper and necesssary in the exercise of its powers. But they must be within the clear intent of the statute, and not in excess of the powers delegated to the agency."

The tax refund section of the Motor Fuel Tax Law (Art. 7065b-13) contains an elaborate and detailed reporting and record provision which was designed to prevent tax evasion and the filing of fraudulent tax refund claims. Section 13 applies only to "motor fuel" as that term is defined in Section 1 of the act and therefore does not include "special fuels".

Subdivision (i) of Article 7065b-14, V.C.S., provides that the owners of certain agricultural vehicles may consume special fuels without qualifying as a user-dealer and paying the tax. Subdivision (f) of the statute contains a credit provision where the user-dealer has erroneously reported and paid more tax than was due on account of either a mistake of fact or law.

It is clear from the language of Subdivision (a) of Art. 7065b-14 that the Legislature intended that liquefied gas or other liquid fuels (special fuels) which are sold and delivered or delivered for use in a "fuel tank or tanks used to supply fuel for the propulsion of any licensed motor vehicle or any other motor vehicle being operated or intended to be operated upon the public highway of this State" were to be

subject to the tax. Since there are no provisions for refunds or for deductions, the presumption arises that the special fuels placed in these fuel tanks were to be used in propelling a motor vehicle upon the public highway. To permit the taxpayer to make such deductions is, in effect, to allow a refund or an offset to the taxes due and owing the State in the absence of statutory authority. In addition, it is our belief that it would be impracticable, if not impossible, for you to promulgate rules or regulations which would result in the special fuels referred to in your request being calculated with the required degree of certainty. Att'y Gen. Op. O-2381 (1940).

It is our opinion that you are without statutory authority to promulgate rules or regulations allowing motor fuel tax deductions on special fuels consumed or used for the generation of power other than for the propulsion of motor vehicles upon the public highways from the same truck fuel tanks which also supply the fuel for the propulsion of the truck upon the highways of this State.

## SUMMARY

The Comptroller of Public Accounts has no statutory authority to promulgate rules or regulations allowing tax deductions on special fuels consumed or used for the generation of power other than for the propulsion of motor vehicles upon the public highways from the same truck fuel tanks which also supply the fuel for the propulsion of the trucks upon the highways of this State. Art. 7065b-14, V.C.S.; Att'y Gen. Ops. V-1487 (1952); V-721 (1948); 0-6363 (1945); 0-6195 (1944); 0-2381 (1940).

APPROVED:

Yours very truly,

PRICE DANIEL
Attorney General

W. V. Geppert
Taxation Division

Mary K. Wall
Reviewing Assistant

By Frank Lake

Frank Lake
Assistant

Charles D. Mathews
First Assistant

FL:ms