[S. F. No. 2859.   Department One.— November 8, 1901.]

THE PACIFIC COAST COMPANY, Appellant, v. ASA R. WELLS, Auditor, etc., Respondent.

MANDAMUS TO AUDITOR — TAXES REFUNDED BY SUPERVISORS — MISTAKE IN LISTING CREDITS — ASSESSOR'S CHANGE OF TRUE BALANCE. — *Mandamus* will lie to compel the auditor to audit and approve a claim properly allowed by the supervisors, upon the assessor's recommendation, for the refunding of a sum of taxes erroneously paid, on account of a clerical mistake of the taxpayer's book-keeper in listing credits in an excessive sum of one hundred thousand dollars, which led the assessor to change a truly stated balance of credits over debts, so as to increase the balance by that excessive sum, without notice to the taxpayer, thus exacting taxes upon said sum which were not in fact due.

ID. — EFFECT OF VOLUNTARY PAYMENT — POWER OF SUPERVISORS TO REFUND TAXES — CONSTRUCTION OF CODE. — The fact that the taxes paid upon said excessive sum of one hundred thousand dollars were voluntarily paid, without protest by the taxpayer, cannot affect the power and duty of the supervisors to refund such taxes as having been erroneously or illegally collected, under the provisions of section 3804 of the Political Code. That section is remedial, and should be liberally construed to carry out its intent and object, to prevent the inequitable retention of money by the county, which was improperly collected, and to which the county has no right.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion.

Webb & Espey, for Appellant.

Lloyd & Wood, for Respondent.

COOPER, C.— The court below sustained a demurrer to the verified petition for a writ of mandate herein, and refused to allow the petitioner to amend.   Judgment was thereupon entered in favor of defendant.   This appeal is from the judgment. The facts are stated in the petition, substantially, as follows: In the month of March, 1900, plaintiff furnished to the assessor of the city and county of San Francisco a verified statement, purporting to set forth all the property owned by it on the first Monday in March, 1900.   In said statement, in the column

headed "List of Personal Property," appeared the following items: —

"Credits or solvent notes and accounts due me from others, unsecured by mortgage or deed of trust, and not including accounts due from savings and loan corporations or to my credit there on account of moneys on general deposit, $323,-776.51.

"Less debts or accounts I owe to *bona fide* residents of this state, unsecured by mortgage or deed of trust (not to include any liability as an indorser, guarantor, or bondsman), $214,-587.37.

"Balance assessable, $9,198."

It will be observed that the difference between the amount of debits and credits is $109,189, and not $9,189. The assessor, believing that a mistake had been made in the process of subtraction, drew his pen through the figures $9,189 and wrote over them "$109,189." The effect of increasing the balance of credits assessable from $9,189 to $109,189 was to charge the plaintiff with $1,625 more in taxes for the year than it would have been required to pay if the balance of credits assessable were only $9.189.

As a matter of fact, plaintiff did not, at the date mentioned, own solvent credits amounting to $323,776.51. The entire amount of such credits was only $223,776.51, and the sum of $9,189 would have been all that plaintiff should have been assessed for, if a correct statement had been made. The mistake occurred through a clerical error of plaintiff's book-keeper, when preparing the statement.

The error occurred in the verified statement given to the assessor by reason of the fact that petitioner's book-keeper wrote the figure 3 instead of the figure 2 in the statement of the total amount of solvent credits. The footing as given in the statement to the assessor of the balance of credits assessable was correct,—$9,189. And the total footing as given to the assessor of property assessable to petitioner was correctly given, —$44,029. The assessor, without notice in any manner to petitioner, drew his pen through the footings and added $100,000 more to the total of credits, making the assessable credits $109,189, and the total assessment of petitioner $149,029. The mistake made by the petitioner, and the addition made to his assessment by the assessor, first came to its notice on or about the 15th of November, 1900, when its tax-bill was

received from the tax-collector. Thereupon it voluntarily paid
to the tax-collector the full amount of the taxes charged,
amounting to $1,625 more than was justly due by it, and that
amount more than it would have been called upon to pay ex-
cept for the change in the totals so made by the assessor.

Upon the attention of the assessor being called to the matter,
he recommended that the said taxes so collected be refunded.
Thereupon petitioner made proper application to the board of
supervisors for an order directing said sum to be refunded,
and that body, on the nineteenth day of December, 1900, passed
a resolution, directing the auditor and treasurer, respectively,
to audit and pay out of the general fund·to petitioner the said
sum of $1,625. The resolution of the said board recited that
said sum was for "taxes overpaid on an erroneous assessment
of personal property, and that by a clerical error of the com-
pany's book-keeper, said assessment was overvalued in the sum
of $100,000."

The resolution or order so passed was approved by the mayor
on the same day. Petitioner has made the proper demand
upon the respondent, as auditor, for his approval and allow-
ance of said claim, but respondent refuses to allow and approve
the same.

We think the facts stated entitled the petitioner to the writ,
and that the court erred in sustaining the demurrer. The
money so paid to the county as taxes was not due from peti-
tioner. It was the amount of taxes upon an assessment of
one hundred thousand dollars, on property that had no exist-
ence. It was an assessment made by the assessor in changing
the footings of petitioner's assessment. It was paid without
consideration, and the city and county have no right to it.
Petitioner has paid all its just taxes, and this sum in addition.
No doubt, if the assessor had called the attention of petitioner
to the statement it had given in, the footings would never have
been changed. It was a clerical error that could easily have
been explained. When the attention of the assessor was called
to it, he recommended that the mistake be corrected. The
board of supervisors, representing the county, after inves-
tigation, made an order to correct it. Shall the city and county
keep the $1,625 regardless of all this? It surely would be in
violation of honesty and fair dealing for them to do so. Is it
in violation of law for them to refund it? We think not. The
board were authorized to order the money refunded, under

section 3804 of the Political Code, which provides: "Any taxes, penalties, and costs paid more than once, or erroneously or illegally collected, may, by the order of the board of supervisors, be refunded by the county treasurer." This being a remedial statute, it should be liberally construed, so as to carry out its intent and object. And it is not without judicial construction.

In *Hayes* v. *County of Los Angeles*, 99 Cal. 74, it appeared that by some mistake real estate had been twice assessed. The owner had been assessed with the property and had paid the taxes. It had also been assessed to a third party, and the taxes so assessed to such third party were not paid. It was accordingly advertised and sold for delinquent taxes. The purchaser at the tax sale paid the delinquent taxes and costs, and afterwards sold and assigned the certificate of purchase. Upon the assignee discovering that the sale was on a double assessment, and void, he applied to the board of supervisors for an order refunding the money.

The board refused the order, and this court held that the order should have been made, and that the word "may" meant the same as "shall." In the opinion this language is used: "It had often occurred, prior to the amendment to the code above quoted, that, by accident or oversight, property was twice assessed and the taxes twice collected. Yet the obstacles in the way of a recovery of the taxes thus improperly collected were so numerous and perplexing, that the remedy for a recovery was scarcely worth pursuing. That the object of the statute was to obviate these difficulties, and provide a means for the recovery of moneys collected by mistake, and to which the county and state have neither a moral nor legal right, is apparent. . . . Section 3804 was enacted to do justice in a class of cases where, but for its provisions, the application of the doctrine of *caveat emptor* would work a hardship to citizens who had paid money which it was inequitable for the county to retain."

In this case it is clear that petitioner has paid money which it is inequitable for the city and county to retain.

In a late case, the supreme court of New York had under consideration the construction of a similar statute of that state, where an application had been made to the board of supervisors to refund moneys paid for the purpose of removing a cloud upon title, caused by sales under illegal or erroneous

assessments. The county court had affirmed the action of the board of supervisors denying the application upon the ground that the taxes were voluntarily paid. The appellate court reversed the case, and held that the order should have been made. In the opinion it is said: "This is not a common-law action to recover an illegal tax paid under duress in law or in fact, nor is it an action in equity to remove a cloud upon title. . . . This is a proceeding under a special statute, which confers power upon the supervisors to refund to any person the amount of an illegal tax collected from him. . . . This proceeding was not governed by the technical rules that apply to actions at law to recover money voluntarily paid, or to suits in equity to remove a cloud upon title. The statute furnishes a convenient and summary remedy which enables the county to restore, without litigation or expense, what it ought not to retain, and a citizen who has paid an illegal tax, without waiting to have his property advertised and sold, to obtain justice. The benefits of the statute are not confined to parties who have paid an illegal tax upon compulsion, but extend to all persons who have paid taxes that they were not legally bound to pay." (*Matter of Adams* v. *Monroe County Supervisors*, 154 N. Y. 625.)

The same rule was laid down by the appellate court of Indiana (*Du Bois* v. *Lake County etc.*, 10 Ind. App. 348) in construing a similar statute of that state. The court, in the opinion, said: "The fact that the taxes were voluntarily paid constitutes no defense under the statute cited. When the auditor added to the assessment, and the taxes, as thus increased by the additions, were carried out on the duplicate and paid, the increased taxes are recoverable from the county." (See also *People* v. *Supervisors of Otsego County*, 51 N. Y. 401, and *People* v. *Supervisors of Madison County*, 51 N. Y. 443.)

It is claimed that the judgment of the lower court is supported by the cases of *Phelan* v. *San Francisco*, 120 Cal. 1, and *Rooney* v. *Snow*, 131 Cal. 51. Neither of the cases contains anything in conflict with what has here been said. The first case was an action to recover taxes paid under protest. It was held that the taxes were voluntarily paid, and not under duress. The section of the Political Code was not relied upon nor mentioned in the decision. In the latter case the appellant had voluntarily paid a license as a retail liquor dealer to the city of Oakland for retailing liquors at a place afterwards discovered to be outside the city limits. The order appropriating moneys to repay the

amount so paid out for license was made by the city council. It does not appear what authority was given the city council by the charter in such cases, and the opinion states that the petition before the board did not show how or why the money was erroneously collected. The opinion is based upon the principle that the voluntary payment of taxes under protest does not authorize the recovery, unless the payment was made in order to protect person or property, and in conclusion it was said, " The city is not responsible in the matter, nor required to refund the money." The action was not brought under section 3804 of the Political Code, and no reference is made to the section in the opinion. It is said by respondent that it would be a dangerous and pernicious doctrine "to hold that a taxpayer may, whenever he considers that he has made a mistake in his statement, after making a voluntary payment of the amount claimed, apply to the board of supervisors for a return of the amount which he deems he has overpaid." The doctrine has never been laid down in so broad terms as the imaginary case stated. Undoubtedly, the rule would not apply to correct an assessment where the taxpayer has merely changed his opinion as to the value of his property. But in a case like this, where it is patent that a mistake was made, and that one hundred thousand dollars was added by the assessor to the total assessment as stated by the taxpayer, it is not a dangerous doctrine to give back to the taxpayer that to which the county has no right.

It follows that the judgment should be reversed and the court below directed to overrule the demurrer to the petition.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the court below directed to overrule the demurrer to the petition.

Harrison, J., Garoutte, J., Van Dyke, J.