PERE MARQUETTE RAILROAD CO. *v.* CITY OF LUDINGTON.

1. Railroads—Taxation—Exemptions.
   A stock of groceries kept by a railroad company to furnish supplies for the crews and passengers of a line of steamboats operated by it under authority of 2 Comp. Laws, § 6269, is not subject to taxation under the general tax law, but is expressly exempted therefrom by 2 Comp. Laws, § 6277, providing for the payment of specific taxes by railroad companies "in lieu of all other taxes upon the properties of such companies," except certain specified real estate.

2. Taxes—Payment Under Protest—Limitation of Actions.
   The provision of 1 Comp. Laws, § 3876, limiting to 30 days the right to sue to recover taxes paid under protest as therein provided, has no application to an action to recover taxes paid involuntarily, though such payment was accompanied by a written protest.

Error to Mason; McAlvay, J. Submitted April 23, 1903. (Docket No. 44.) Decided June 15, 1903.

*Assumpsit* by the Pere Marquette Railroad Company against the city of Ludington to recover taxes paid under protest. From a judgment for defendant, plaintiff brings error. Reversed.

*M. B. Danaher* (*F. W. Stevens*, of counsel), for appellant.

*Henry C. Hutton*, for appellee.

CARPENTER, J. This is a suit brought by the plaintiff to recover from the defendant a tax claimed to have been

illegally assessed, and paid involuntarily and under protest. In the year 1899 the city of Ludington assessed the tax against the plaintiff on account of its ownership of a stock of groceries, of the value of about $1,000, situated in its warehouse in said defendant city. This stock of groceries was kept to furnish supplies for the crew and passengers on a line of steamboats owned and operated by plaintiff. These boats ran between said city of Ludington, one of plaintiff's *termini* upon Lake Michigan, and points in Wisconsin. On February 28, 1900, the city treasurer of Ludington, under a warrant for the collection of said taxes, levied on certain personal property of plaintiff. Thereupon, under a written protest, plaintiff paid the tax, and subsequently, on the 9th of April, commenced this suit. The case was tried before the judge without a jury, who, after finding the foregoing facts, rendered a judgment for the defendant, on the ground that the assessment was legal and the suit not brought within the time limited by law. We are called upon to consider the correctness of each of these holdings.

1. The legality of the assessment under consideration depends on whether the stock of groceries was taxable under section 6277, 2 Comp. Laws. That section reads:

" Every railroad company and union railroad station and depot company owning or operating any railroad situated in whole or in part in this State shall, on or before the first day of July in each year, pay to the State treasurer, on the statement of the auditor general, a specific tax upon the property and business of such railroad corporation operated within the State, which tax shall be computed in the following manner, namely: Upon all such gross income not exceeding $2,000 per mile of road actually operated within this State, two and one-half per cent. of such gross income; upon such gross income in excess of $2,000 and not exceeding $4,000 per mile, three and one-fourth per cent. thereof; upon all such gross income in excess of $4,000 and not exceeding $6,000 per mile, four per cent. thereof; and upon all such gross income in excess of $6,000 per mile, and not exceeding $8,000 per mile, four and one-half per cent. thereof; and upon all

such gross income in excess of $8,000 per mile of the road so operated, five per cent. thereof; that all gross income of union railroad station and depot companies whose earnings are in excess of $20,000 per mile shall pay on all such gross incomes in excess of $20,000 per mile of road so operated ten per cent. thereof. And when the railroad lies partly within and partly without this State, *prima facie*, the gross income of said company from such road for the purposes of taxation shall be on the actual earnings of the road in Michigan, computed by adding to the income derived from the business transacted by said company entirely within this State such proportion of the income of said company arising from interstate business as the length of the road over which said interstate business is carried in this State bears to the entire length of the road over which said interstate business is carried. The taxes so paid shall be in lieu of all other taxes upon the properties of such companies, except such real estate as is owned and can be conveyed by such corporations under the laws of this State, and not actually occupied in the exercise of its franchises, and not necessary or in use in the proper operation of its road; but such real estate so excepted shall be liable to taxation in the same manner, and for the same purposes, and to the same extent, and subject to the same conditions and limitations as to the collection and return of taxes thereon, as is other real estate in the several townships or municipalities within which the same may be situated."

It is contended by defendant, notwithstanding the fact that section 6269, 2 Comp. Laws, authorizes plaintiff to own and operate the line of steamboats, that the language, "the taxes so paid shall be in lieu of all other taxes upon the properties of such companies," except certain specified real estate, does not relieve plaintiff from liability to pay taxes upon said steamboats and the supplies used thereon. This contention places a narrow and strained construction on the language above quoted. In violation of sound principle and authority (Suth. Stat. Const. § 328; *Sherwin* v. *Bugbee*, 16 Vt., at page 445; *Brocket* v. *Railroad Co.*, 14 Pa. St., at page 243 [53 Am. Dec. 534]; *Miller* v. *Kirkpatrick*, 29 Pa. St., at page 229), it attempts to add other exceptions to those specified in the statute.

It is argued that this construction, excepting steamboats and their supplies from the property exempted, is warranted by the language of the statute itself. It is argued that, since the specific tax is upon "the property and business of such railroad corporation operated within the State," the exemption cannot be extended to the line of steamboats, which are operated in part outside the State. The language above quoted points out the subjects on account of which the specific tax is paid. The statute provides that, on account of its property,—which, in the absence of qualifying words, means its taxable property, —and its business operated in this State (and this would comprise all its taxable interests), the railroad company shall pay as a specific tax a certain part of its gross income. There is nothing in this language to indicate that the property on account of which the specific tax is paid is anything less than the entire taxable property of the railroad company, for surely the words "operated within the State" qualify the word "business," and that word only.

The argument is also made that, according to the proper construction of section 6277, the gross income upon which specific taxes are paid includes no part of the revenue derived from steamboats, and therefore said steamboats are taxable. This argument is very forcible, if the assumption upon which it is based is well founded, for it is scarcely conceivable that the legislature intended to exempt both the steamboats and their earnings from taxation. We do not think, however, that said assumption is well founded. We cannot agree with defendant that, according to the proper construction of section 6277, the gross income upon which the specific tax is paid includes no part of the earnings of the steamboats. Defendant argues that the steamboats are taxable because their earnings are not taxable. We think, however, there is greater force in the opposing argument, that, as the steamboats are exempt from taxation, their earnings are not.

The court below relied, and defendant's counsel now

relies, upon the case of *Illinois Central R. Co.* v. *Irvin,* 72 Ill. 452.   There it was held that legislation exempting the plaintiff railroad company from taxation "upon all the property and assets of every name, kind, and description belonging to said corporation" did not apply to a steamboat and wharfboat owned by it, and used in transferring passengers and freight.   That decision is based upon the ground that the railroad company was not authorized by its charter to "engage in carrying by water, or otherwise than by the lines of railway so to be constructed."   That reasoning, applied to the facts in this case, would lead to an entirely different conclusion, and entitle plaintiff to judgment.

If plaintiff is under no obligation to pay taxes upon its line of steamboats otherwise than by paying a percentage of its gross income, no argument would seem necessary to prove that supplies of food for the boats, like supplies of fuel for the engines on its railroad, are not taxable.

Defendant's counsel apprehends injury to the public if the railroad company is permitted to invest money to the amount of $1,000 in groceries and be exempt from paying taxes thereon.   If the plaintiff had deposited this $1,000 in the bank as a fund for the purchase of supplies from day to day, obviously it would have escaped taxation upon this money, and it is just as obvious that the injury to the public would have been the same as it now is.   In establishing a specific tax in lieu of all other taxes, we do not think the legislature intended to prevent railroad companies purchasing supplies at such times and in such quantities as business judgment might demand.   This decision does not, as defendant's counsel seems to fear, establish a precedent which exempts supplies purchased by the railroad company for the purpose of "going into the grocery business."   The reasoning of this case, as we think must be apparent to every reader, applies only to supplies intended to be used for some legitimate purpose of the corporation.

2. The circuit judge held that section 3876, 1 Comp. Laws, was applicable to this case, and prevented a recovery by the plaintiff, because it waited more than 30 days after paying the tax in question before commencing this suit. Section 3876 reads:

"Any one * * * may pay any tax, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover if the tax is shown to be illegal for the reason specified in such protest."

No protest was required, either before this statute was passed or since, to recover the taxes in question, because they were paid involuntarily. See *Cox* v. *Welcher*, 68 Mich. 263 (36 N. W. 69, 13 Am. St. Rep. 339). Plaintiff's right of action, therefore, does not rest upon this statute. If it had made no protest at all it could have recovered, and then, clearly, the 30-day limitation would not have applied. The right to recover without making a protest surely was not lost by making a protest. The 30-day limitation, therefore, applies only to cases in which, without a protest, one cannot recover back taxes paid by him. It does not apply to this case.

We conclude, therefore, that the judgment of the trial court must be reversed, and a judgment entered in this court for plaintiff, with costs of both courts.

The other Justices concurred.