JAMES M. HOYT and Others, Copartners, Doing Business under the Firm Name and Style of PRINCE & WHITELY, Appellants, *v.* MARTIN C. WRIGHT, Respondent, Impleaded with EMMA M. H. WRIGHT, Defendant.

First Department, December 20, 1932.

*William St. John Tozer* of counsel [*Philip W. Buchanan* with him on the brief; *White & Case*, attorneys], for the appellants.

*J. Sidney Bernstein* of counsel [*Arthur Hendrick Bernstein* with him on the brief], for the respondent.

MERRELL, J.   Plaintiffs sued to recover the sum of $14,447.52, with interest.   Two causes of action are set forth in the complaint. The first cause of action was for the alleged conversion by the defendant of the sum of $15,000 claimed to have been paid to defendant by plaintiffs by mistake.   In the second cause of action contained in the complaint the plaintiffs seek to recover the sum aforesaid as for moneys had and received by the defendants and which the defendants had received and collected to and for the use

and benefit of the plaintiffs through mistake, errors or inadvertence of plaintiffs.

The answer of the defendant, respondent, denies certain allegations of the complaint, and sets up a counterclaim, which counterclaim was withdrawn by the defendant on the trial of the action.

Plaintiffs were formerly stockbrokers and members of the New York Stock Exchange. The defendant was a customer of plaintiffs and maintained with them a margin account. On or about May 10, 1929, the defendant purchased in his account with the plaintiffs 2,000 American Superpower rights, paying therefor $20,500. By virtue of such rights the defendant was entitled to subscribe to 500 shares of United Corporation stock at $30 per share. These rights expired on May 24, 1929. On May 11, 1929, the defendant sold short 500 shares of United Corporation stock at $75.25 per share. This sale was made by plaintiffs and the defendant's account was credited with the sale price of $37,625. Plaintiffs loaned to defendant the 500 shares of the United Corporation stock to make delivery on the short sale. On May 17, 1929, the defendant instructed plaintiffs to exercise the 2,000 rights to purchase 500 shares of United Corporation stock at $30 per share and to use the 500 shares to replace the 500 shares which the plaintiffs had delivered to defendant on his short sale. The complaint alleges the giving of such instructions, and there is no denial thereof in the answer of the defendant, nor did the defendant in his testimony deny such instructions to plaintiffs. Plaintiffs subscribed for the stock as requested by defendant and thereafter paid out for defendant $15,000 therefor. On May 21, 1929, defendant requested from the plaintiffs a check for the balance due him in his account, together with ten shares of Chatham Phenix bank stock which was then in his account. In accordance with such request the plaintiffs then delivered to the defendant their check, dated May 21, 1929, for $28,385.99, together with the ten shares of Chatham Phenix bank stock. Through an error on the part of plaintiffs they neglected to deduct the $15,000 paid for the 500 shares of stock subscribed for on behalf of defendant. The defendant testified that he had never paid for the United Corporation stock, and the defendant's account, introduced in evidence, shows that the amount paid on the purchase of said stock had not been charged to his account prior to the payment by the plaintiffs to defendant of the $28,385.99. In his answer the defendant admits that the plaintiffs demanded a return of the $15,000, and that he refused to repay to plaintiffs said sum.

At the trial the defendant contended that on May 21, 1929, when defendant closed out his account with the plaintiffs and

received their check for $28,385.99, they were not entitled to retain any money to cover the short sale, and that at that time they had not as yet exercised the rights to purchase the 500 shares of United Corporation, nor had they paid out any moneys on behalf of the defendant in connection with the short sale. The defendant contends that it was not until May twenty-fourth that the plaintiffs paid the $15,000 to repurchase the stock for the defendant's account, and that, therefore, on May twenty-first there was nothing owing to plaintiffs by defendant, and that, therefore, plaintiffs were not entitled to retain any sum out of the moneys standing to the credit of the defendant. The defendant contends that inasmuch as the plaintiffs had no immediate right to possession of any part of the moneys so paid to defendant on May twenty-first, no action for conversion would lie on defendant's refusal to return any part of the moneys which he had received on May twenty-first, and that at that time he was clearly entitled to the full amount, and that his refusal to return any part thereof could not constitute conversion.

We are of the opinion that the trial court correctly held that, under the circumstances, there was no technical conversion by the defendant of the moneys claimed to have been erroneously paid to him. But we are of the opinion that, under the allegations of the complaint in the second cause of action therein set forth for moneys had and received by the defendant, whereby the defendant was overpaid the price paid by the plaintiffs for the 500 shares of United Corporation stock and had received said moneys through such overpayment, and which moneys, in good conscience, belonged to the plaintiffs, a good cause of action existed against the defendant for moneys had and received. In the thirty-first paragraph of the complaint, in the second separate and distinct cause of action therein alleged, the plaintiffs allege: " That on or about May 21, 1929, the defendants above named received and collected to and for the use and benefit of the plaintiffs, from the plaintiffs through the mistake, error and /or inadvertence of the plaintiffs, the sum of $15,000 which said sum the defendants retain and although duly demanded refuse to pay, except the sum of $552.48, and have knowingly, wilfully and unlawfully converted it to their own use and benefit to the damage of the plaintiffs in the sum of $14,447.52." The trial court, in dismissing the complaint at the close of the evidence, held that both the causes of action set forth in the complaint were for conversion of the moneys in question. While it is true that in the thirty-first clause of the complaint above quoted the plaintiffs allege that the moneys in question were wilfully and unlawfully converted by the defendants to their own use, we think such allegation may be regarded as surplusage, and that the

remaining allegations contained in the second separate and distinct cause of action set forth in the complaint were sufficient to justify a recovery by the plaintiffs as for money had and received. Upon the argument of the appeal counsel for the respondent admitted an obligation on the part of the defendant to repay to plaintiffs the moneys which he had received through plaintiffs' mistake, but contended that the action could not be maintained for the conversion of said moneys, but, at most, that the defendant was indebted to plaintiffs for the moneys which had erroneously been paid to him. There is no doubt in our minds that where a party receives from another moneys which do not belong to him, and which, in good conscience, belong to another, he may be compelled to repay said moneys in an action as for moneys had and received. In *Roberts* v. *Ely* (113 N. Y. 128) Judge ANDREWS, writing for the Court of Appeals, said (at p. 131): "Assuming that the plaintiff is right in his construction of the facts, the case falls within the familiar doctrine that money in the hands of one person, to which another is equitably entitled, may be recovered in a common-law action by the equitable owner upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the person beneficially entitled. The action for money had and received to the use of another is the form in which courts of common law enforce the equitable obligation. The scope of this remedy has been gradually extended to embrace many cases which were originally cognizable only in courts of equity. Whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in this form of action, subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons. * * * It is immaterial, also, whether the original possession of the money by the defendant was rightful or wrongful. It is sufficient that the duty exists on his part, created by the circumstances, to account for and pay it over to the plaintiff."

We are also of the opinion that the court erred in holding that the second cause of action set forth in the complaint sounded in conversion. In an action brought for money had and received to the use of the plaintiff, an allegation that the " defendant converted the same " may be regarded as mere surplusage. Such allegation does not convert the action from one in contract to a cause of action in tort for conversion. (*Leach* v. *Smith*, 27 App. Div. 290; affd., 163 N. Y. 589.) In this court Judge RUMSEY, writing in *Leach* v. *Smith* (*supra*) said (at p. 292): " The complaint sets up the

transaction; alleges the settlement with the attaching creditors, the amount paid to them, and that after the payment of that amount there remained in the hands of the defendant to pay to the plaintiff the sum of $4,000. It alleges a demand of that sum of the defendant and his refusal to pay it. This constitutes a perfect cause of action upon contract for the failure of the defendant to comply with the terms of the agreement of June 7, 1895. But he complains because, with the statement that the defendant has utterly failed and refused, and still fails and refuses to pay over to the plaintiff the said sum, or any part thereof, she alleges that he has fraudulently converted and appropriated the sum to his own use. This allegation was entirely unnecessary to the setting out of a cause of action upon contract, it is true, but it does not follow that, because a complaint upon contract contains unnecessary allegations, that such force will be given to them as to change the nature of the cause of action. (*Tuers* v. *Tuers*, 100 N. Y. 196.) "

The facts in this case clearly appear and there is no dispute that the plaintiffs overpaid the defendant in the transaction the sum for which the plaintiffs seek to recover. In this case, the complaint having been dismissed, plaintiffs are entitled to the most favorable inferences from the evidence, and all facts in dispute are to be deemed established in plaintiffs' favor. It is a well-settled rule that in determining the correctness of a nonsuit the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all contested facts are to be deemed established in his favor. (*Ladd* v. *Ætna Insurance Co.*, 147 N. Y. 478; *Weil* v. *D. D., E. B. & B. R. R. Co.*, 119 id. 147, 152, 153.)

We are, therefore, of the opinion that the court improperly dismissed the complaint as to the second cause of action therein alleged, and that the judgment should be reversed and a new trial granted, with costs to the plaintiffs to abide the event.

FINCH, P. J., SHERMAN and TOWNLEY, JJ., concur; MARTIN, J., concurs in result.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.