## CONSUMERS POWER COMPANY *v.* COUNTY OF MUSKEGON.

1. TAXATION—CONSTITUTIONAL LAW—STATUTES.
   Governmental powers of taxation are controlled by constitutional and statutory provisions.

2. SAME—STATUTES—EQUITY.
   Issues arising under taxation laws may not be adjudicated by the general application of equitable principles.

3. SAME—OFFICERS—ESTOPPEL—MISTAKE.
   The collection of duly levied taxes for governmental purposes is a governmental function and the collection officer cannot, by mistake or misinformation, work an estoppel enforceable in a court of equity.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 39 *et seq.*
[2] 51 Am Jur, Taxation § 987.
[3] 51 Am Jur, Taxation § 966.
[4] 51 Am Jur, Taxation § 1191.
[6] 51 Am Jur, Taxation §§ 1167, 1168.
[7] 14 Am Jur, Courts § 66.
[8] 51 Am Jur, Taxation § 1184 *et seq.*

4. SAME—VOLUNTARY PAYMENT—MISTAKE OF FACT.
>A tax voluntarily paid under a mistake of fact may not be recovered by the taxpayer.

5. SAME—WINDFALL—UNJUST ENRICHMENT—PROTEST.
>The equitable principles of "windfall" and "unjust enrichment" cannot be applied in an action at law to recover taxes not paid under protest.

6. SAME—STATUTES—REFUNDS.
>The obligation to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the method pointed out by express statute, hence, refund or a credit of taxes, even though erroneously paid, may not be made or even voluntarily refunded in the absence of statutory authority so to do.

7. STATUTES—CONSTRUCTION—STARE DECISIS.
>The doctrine of *stare decisis* applies with full force to decisions construing statutes or ordinances, especially where the construction has been long acquiesced in by the legislature, the power to change the language of the statute so construed, being regarded as one to be exercised solely by the legislature.

8. TAXATION—VOLUNTARY PAYMENT—PAYMENT UNDER PROTEST.
>The right to recover taxes voluntarily paid has not been granted by statute in this State, the right of recovery from the tax-collecting officer being confined to such taxes as have been paid under protest (CL 1948, § 211.53).

9. COSTS—PUBLIC QUESTION—RECOVERY OF TAXES VOLUNTARILY PAID.
>No costs are allowed in action to recover personal property taxes, claimed to have been voluntarily paid under mistake, a public question being involved (CL 1948, § 211.53).

SMITH and BLACK, JJ., dissenting.

Appeal from Muskegon; Smith (Raymond L.), J., presiding. Submitted January 5, 1956. (Docket No. 32, Calendar No. 46,660.) Decided September 4, 1956. Rehearing denied December 4, 1956.

Action by Consumers Power Company, a Maine corporation, against the County of Muskegon, the Township of Fruitport, Fruitport Rural Agricultural School District of Fruitport Township, Beach

School District No. 5 of Fruitport Township, all municipal corporations, and Mary Ann Cooley, former township treasurer, to recover overpayment of taxes paid without protest. Judgment for plaintiff. Defendants appeal. Reversed.

*Sessions & Barlow,* for plaintiff.

*Street & Sorensen (Paul T. Sorensen,* of counsel), for defendant Township of Fruitport.

*William J. Balgooyen,* for defendant Fruitport Rural Agricultural School District.

*Stribley & Rude (Arthur M. Rude,* of counsel), for defendant Beach School District.

Kelly, J. Plaintiff and appellee, Consumers Power Company, paid $30,659.36 excess personal property tax to defendants during the years 1951 and 1952. Defendants appeal from judgment for plaintiff in an amount equal to the excess taxes paid.

The statutory provision in regard to a taxpayer's right to institute suit to recover paid taxes is found in CL 1948, § 211.53 (Stat Ann 1950 Rev § 7.97), and the portion applicable to this appeal is as follows:

"He may pay any tax or special assessment, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reason shown in such protest."

Plaintiff did not pay the 1951 and 1952 excess taxes under protest and did not sue until December 29, 1953. Its brief discloses that an exhaustive study of the law has been made endeavoring to find some way this Court would be justified in sustaining the trial court's judgment.

Plaintiff is a corporation engaged as a public utility in the business of generating, transmitting, delivering and furnishing electric power and energy to residents of the State of Michigan and has property assessed in 63 counties of the State. On or about December 1st, each year, plaintiff receives at its Jackson office approximately 1,200 separate tax statements, and a staff of 5 clerks check the statements after which payments are made.

Plaintiff claims that its payment of excess taxes was due to a mistake of fact, both on the part of the assessor, who figured the tax and made the levy, and on the part of plaintiff, who failed to discover the error until after the taxes had been paid.

In its brief plaintiff calls attention to the provisions set forth in 51 Am Jur, Taxation, § 1191, p 1023:

"A payment of taxes under a mistake of fact (as distinguished from a mistake of law) has been held not to be voluntary, and is therefore recoverable."

On this point, plaintiff also cites from 84 CJS, Taxation, § 637, p 1284, as follows:

"In the absence of a statute to the contrary, it is generally held that taxes voluntarily paid under a mistake of law, with full knowledge of the facts, cannot be recovered back, while taxes paid under a mistake of fact may ordinarily be recovered back."

Plaintiff's brief sets forth several Michigan cases dealing with the general equitable principle that money may be recovered back when paid under mu-

tual mistake. In this connection we note that the trial court in his opinion said:

"It is well-settled law that a payment, although voluntarily made, if made under a mistake of a material fact may be recovered even if the mistake be due to lack of investigation.

"Does payment of taxes under similar circumstances present different questions? Upon principle it would not appear that it does."

It is not possible under the statutory provisions and the interpretation of same by this Court to sustain the trial court's opinion and the plaintiff's theory herein, and we set forth 2 cases to sustain our conclusion in this regard.

Contrary to the theory that we should apply the general equitable rules in a taxation case of this nature are the cases of *Langford* v. *Auditor General,* 325 Mich 585; and *Bateson* v. *City of Detroit,* 143 Mich 582. In the *Langford Case* we stated (pp 590, 591):

"Governmental powers of taxation are controlled by constitutional and statutory provisions. *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659. Hence, it is not possible to adjudicate issues arising under taxation laws by the general application of equitable principles. This phase of the law seems to have been overlooked by plaintiffs who stress their right to relief in the instant case on equitable, rather than legal, grounds.

" 'The collection of duly levied taxes for governmental purposes is a governmental function and the collection officer cannot, by mistake or misinformation, work an estoppel, enforceable in a court of equity. The fact, and not the misinformation, controls.' *Lovett* v. *City of Detroit,* 286 Mich 159, 161, 162."

In the *Bateson Case, supra,* the city assessor made a mistake in the description of the property owned

by Bateson and sent him a tax bill on which a description appeared which included more land than Bateson owned. Bateson, like the plaintiff in the instant case, did not notice the error and paid the tax without protest and then sued to get it back. This Court, commenting on the rule that a tax voluntarily paid cannot be recovered back, said (pp 583, 584):

"It is apparent that the plaintiff, when he made the payments in question, had before him the description assessed, and could have determined by a comparison of the same with the description in his deed that such assessment covered more land than he or his wife owned. The tax was voluntarily paid. The rule that a tax voluntarily paid cannot be recovered back, and that the taxpayer cannot aver a mistake of fact which results from his own neglect to consult the record, is too well settled to require extended citation of authorities. See 2 Cooley on Taxation (3d ed), p 1495; *Manistee Lumber Co.* v. *Township of Springfield,* 92 Mich 277."

A rather general discussion of a taxpayer's right to recover back taxes paid was set forth in *General Discount Corporation* v. *City of Detroit* (1943), 306 Mich 458. General Discount Corporation paid taxes for many years by mistake and without duress or protest and finally brought an action for the recovery of same. This Court denied recovery, and stated (pp 465, 466):

"At common law payment under protest was voluntary unless accompanied by duress. The effect of CL 1929, § 3444, was merely to make payment of an invalid tax under protest involuntary irrespective of any question of compulsion. When taxes are paid under actual duress the rule both before and since the statute is that protest is unnecessary. *Pere Marquette R. Co.* v. *City of Ludington,* 133 Mich 397, where there was an actual levy by the city treasurer under a warrant. * * * This gap in the tax law

may account for the broad definition of duress laid down in the special assessment cases. In all other cases, however (except special assessments), protest is unnecessary only where there is some actual or threatened exercise of the power possessed from which the party indebted has no other means of immediate relief than by making payment. Plaintiff makes no claim that its intangibles were actually seized or threatened with seizure. There being neither payment under duress nor payment under protest, plaintiff may not recover."

Plaintiff sets forth cases from the States of New York, Minnesota, Connecticut, South Dakota, Ohio, and Wisconsin. It particularly calls attention to the Wisconsin case of *State, ex rel. Pabst Brewing Company,* v. *Kotecki,* 163 Wis 101 (157 NW 559). In this case the assessor entered an erroneous item of plaintiff's personal property on the assessment roll, resulting in an overpayment of taxes in the amount of $8,739.32. The court said (p 104):

"It is obvious that the excessive tax was the result of a purely clerical error of the assessor, who had no intention to insert these 2 items twice each on the assessment roll. * * * The facts alleged show clearly that the payment of this amount was the result of a mistake of fact due to an error committed by the city officers, and plaintiff's payment thereof as a lawful tax constitutes, under the circumstances, a fraud, which entitles plaintiff to recover. * * * 'It surely would be in violation of honesty and fair dealing' for the city to keep it."

The Wisconsin legislature provided for the filing of a claim against the city by a taxpayer who was aggrieved by the levy and collection of any unlawful tax assessed against him. The statute did not define what should constitute an unlawful tax but gave the city the right to refund the tax if a court found

the same to have been unlawful. There is no such provision in Michigan.

Plaintiff sets forth several Michigan cases dealing with the general legal principle that a levy in excess of the legal limit is invalid and void. We will not review these cases, however, as none of them deals with a suit to recover taxes back that have been paid.

We cannot agree with plaintiff's claim that "windfall" or "unjust enrichment" is material to this issue because they are equitable principles that cannot be applied in this action at law.

Defendants contend that they are powerless to return or refund the taxes even though they desire to do so, and they cite the case of *People, ex rel. Eitel*, v. *Lindheimer*, 371 Ill 367 (21 NE2d 318, 124 ALR 1472), where the supreme court in discussing recovery back of taxes erroneously paid said (p 371):

"The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the method pointed out by express statute. (*People* v. *Sears*, 344 Ill 189 [176 NE 273]; Cooley on Taxation [2d ed], p 15.) So, also, any right to a refund or a credit of taxes is purely of statutory origin, and in the absence of an authoritative statute, taxes voluntarily, though erroneously, paid, cannot be recovered, nor even voluntarily refunded by a county, although there may be justice in the claim. (*LeFevre* v. *County of Lee*, 353 Ill 30 [186 NE 536].) Therefore, section 268b of the revenue act is the exclusive source upon which any claim of a right by appellees to a refund or a credit must necessarily be based."

In *In re Clayton Estate*, 343 Mich 101, 107, this Court quoted with approval the principle enunciated in 21 CJS, Courts, § 214, pp 388, 390, as follows:

" 'The doctrine of *stare decisis* applies with full force to decisions construing statutes or ordinances, especially where the construction has been long acquiesced in. * * *

" 'This rule is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature.' "

Many sessions of the legislature have convened since this Court was called upon to construe a taxpayer's right to recover paid taxes. The legislature did give the taxpayer a cause of action against the owner of the land upon which he paid the taxes by mistake by PA 1931, No 218 (CL 1948, § 211.381 [Stat Ann 1950 Rev § 7.771]). The legislature in this State, except as specified by CL 1948, § 211.53 (Stat Ann 1950 Rev § 7.97), hereinbefore quoted, has not provided for a taxpayer's right to recover taxes paid, as has been provided in several other States.

To grant the relief requested by the plaintiff would require this Court to exercise legislative prerogatives—namely, to write into the statute the right to recover taxes paid under mutual mistake. This cannot be done.

Judgment reversed. No costs, a public question being involved.

Dethmers, C. J., and Sharpe, Boyles, and Carr, JJ., concurred with Kelly, J.

Smith, J. (*dissenting*). This is one of those cases where the uncritical use of precedents which are not precedents leads to a grotesque result. Here a taxpayer, by reason of arithmetical mistakes by a town-

ship supervisor, paid substantially 10 times as much tax as was properly due and owing. Illustrative of the errors committed, we note the following from the facts stipulated:

"The correct amount of tax upon the personal property of the plaintiff in defendant, Fruitport Rural Agricultural School District, for the year 1952, computed upon the total valuation of $59,274 at the rates allocated to the various units for said year, would have been as follows:

|  | Mills | District No. 1 | District No. 2 | District No. 3 | District No. 4 | Agricultural District (Combined Totals) |
|---|---|---|---|---|---|---|
| County Tax | 6.4 | $ 52.53 | $ 32.94 | $ 197.60 | $ 96.29 | $ 379.36 |
| Township Tax | 1.1 | 9.03 | 5.66 | 33.96 | 16.55 | 65.20 |
| School Operating | 7.5 | 61.55 | 38.60 | 231.56 | 112.84 | 444.55 |
| School Debt | 20.0 | 164.14 | 102.94 | 617.50 | 300.90 | 1,185.48 |
| Totals | | $287.24 | $180.14 | $1,080.62 | $526.58 | $2,074.59 |

"However, John Makurat, then the supervisor of the defendant, Township of Fruitport, *made a mistake* in entering the amount of said taxes in the tax roll for each of said old districts and the assessment roll for each of said old districts, except old District No. 1, *by increasing each of the foregoing items of tax by 10 times,* so that said taxes actually appear upon the tax and assessment rolls of said township for the year 1952 in the following amounts:

|  | District No. 1 | District No. 2 | District No. 3 | District No. 4 | Agricultural School District (Combined Totals) |
|---|---|---|---|---|---|
| County Tax | $ 525.25 | $ 329.40 | $ 1,976.00 | $ 962.88 | $ 3,793.53 |
| Township Tax | 90.28 | 59.32 | 339.63 | 165.49 | 654.72 |
| School Operating | 615.53 | 386.03 | 2,315.63 | 1,128.38 | 4,445.57 |
| School Debt | 1,641.40 | 1,029.40 | 6,175.00 | 3,009.00 | 11,854.80 |
| Totals | $2,872.46 | $1,804.15 | $10,806.26 | $5,265.75 | $20,748.62" |

(Emphasis added.)

It will be observed from the above that the consistent error made is the displacement of the decimal point; the sum of $52.53 in line 1 above (county

tax, District No. 1), becoming $525.25, $9.03 becoming $90.28, and so forth. The taxpayer, in ignorance of the mistakes thus made, paid the tax without "protest." In this suit, through the historic action of assumpsit, the taxpayer seeks relief. Restitution of the amount "in excess of the proper amount of taxes" was ordered by the trial court and the case is before us on general appeal.

What we have before us is simply an overpayment, to the taxing authorities, arising out of a mutual mistake of fact, an arithmetical, clerical, error. Were we to categorize, we would say that the law of mistake is primarily involved, not the law of taxation. True, the mistake was made in connection with a taxation payment, but there is no assertion here made by the taxing authorities that there would be a shadow of merit to their retention of the money paid as a properly imposed tax. If so, we would be involved in the most serious constitutional problems. This is more analogous to the situation where the taxpayer hands over to the tax collector two $10 bills which are stuck together, thus doubling his proper payment. He demands one back. There is here involved no question of "protest," for the payor knows of nothing to protest. There is no question of valuation, there is no question of failure to exhaust administrative remedies as to proper assessment, there is no question of deductions. In such cases, cases involving alleged invalidities or irregularities in the tax structure itself, the courts have narrowly circumscribed recovery, have hedged it about with a myriad of conditions. The reasons were well stated in *Gould v. Board of County Commissioners of Hennepin County,* 76 Minn 379, 381 (79 NW 303, 530):

"If a party could recover from the public whenever there was some illegal or irregular action on the part of public officers in the assessment or levy

of the tax, merely because he was ignorant of such illegality or irregularity at the time he paid the tax, the public finances would be thrown into chaos, and frequently municipalities would be reduced to utter bankruptcy. Municipalities do not guarantee the taxpayers correct action on part of their officers. Irregular action does not necessarily injure the parties concerned, and, when it does, the remedies given by review, appeal, or by way of defense to proceedings to enforce the tax are supposed to afford full redress." *Ibid.*

See, also, Stason, Judicial Review of Tax Errors, 28 Mich LR 637.

On the other hand, the law as to the retention of moneys received as a result of mistake of fact is equally clear. It rests upon a very simple proposition, that it is unconscionable and inequitable that anyone unjustly enrich himself as a result of another's mistake. It matters not that the payor may have been careless in making his overpayment. It is the normal situation, in this type of case, that the payor has not attained that standard of care exercised by the reasonable man and that is precisely the reason he is in trouble. We ground recovery, however, upon the injustice of the retention by the payee. The doctrine of contributory negligence is not involved. We do not penalize for lack of care unless the lack results in harm to someone else (Restatement, Restitution, § 59) and here that someone else has suffered a windfall, not harm.

Such has been the law from the very earliest times. The classical Roman law had its *condicto indebiti* which "included not only payments of nonexistent obligations, but overpayments, transfers of specific objects of ownership such as land or a slave, some cases of payments by or to the wrong person, and was extended even to include a claim for correction that we would call reformation." Dawson, Unjust

Enrichment, p 45 (1951). It is of interest to note, in the historic case of *Bonnel* v. *Foulke* (1657), 2 Sid 4 (82 Eng Rep 1224),* that after the passage of over a thousand years there had been, with respect to overpayments, no significant dilution of the principle. Here the plaintiff, "being one of the colemeeters of London," paid his rent twice, once to the Lord Mayor, a second time to the Chamberlain of London. In an action of *indebitatus assumpsit* against the mayor, it was adjudged that the "action well lies." Thus, according to Ames, Lectures on Legal History, p 163: "By means of the fiction of a promise implied in law *indebitatus assumpsit* became concurrent with debt, and thus was established the familiar action of assumpsit for money had and received to recover money paid to the defendant by mistake. *Bonnel* v. *Foulke* (*sic*) (1657) is, perhaps, the first action of the kind."

It is clear beyond question, moreover, that the principle retains its vitality in the modern law. See Restatement, Restitution, §§ 15–43, particularly § 20. "A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess." The decisions of this Court are in full accord therewith. See, as illustrative, *Pingree* v. *Mutual Gas Co.*, 107 Mich 156, where payment of excessive charges due to ignorance of a material fact justified recovery of the overcharge; *Stowell* v. *Ames*, 148 Mich 439, where one who, because of miscalculation, had returned part of a price paid, had a right of action for the money so returned; *Gorham Brothers* v. *Ann Arbor R. Co.*, 228 Mich 273, where a shipper who had paid freight

---

* The original report is in Norman French. The translation used is that found in Thurston's Cases on Restitution, p 595.

rates later determined to be excessive, was held entitled to repayment of the excess.

So much is clear. One who overpays a just debt is entitled to restitution from the payee, to the extent that benefits have been received by the one at the expense of the other. The proper action is assumpsit. (In passing, I must reject Mr. Justice KELLY's statement that "We cannot agree with plaintiff's claim that 'windfall' or 'unjust enrichment' is material to this issue because they are equitable principles that cannot be applied in this action at law." On the contrary, this action at law is the action of assumpsit, which is equitable to the very marrow of its bones. Windfall and unjust enrichment are of its essence. The development will be found in my dissent in *Janiszewski* v. *Behrmann,* 345 Mich. 8.)

Is the case the weaker for the payor because the payee is a taxing authority, a municipal unit? The question gives rise to some considerations of the gravest possible nature. If it be conceded that a private person would be under an obligation to return the mistakenly-paid excess, the obligation arises from the inequity of the retention, its unfairness, the unconscionable assertion of a right to enrichment arising from another's error. There is, in fact, a constructive fraud. Are we to assume that these considerations of the conscience have no application to the government? Do we live under a double standard of morality, whereby that which is an abomination when committed by the private citizen becomes good government if accomplished by an arm of the ruling power? The mere suggestion is repellent. Cases are legion in which a municipality, having overpaid a debt, has recovered the overpayment on plainest principles of equity. The cases are collected in 63 ALR 1346. If the same considerations of equity are not to apply in the case before us it will require, at least as a starting point, a valid

statute so stating in the clearest possible terms. Such a statute is not cited to us. I find it not. Moreover, I find nothing in the Constitution or the statute law of this State forbidding a governmental unit from exercising ordinary principles of common honesty. Until such appears I shall conclude that this Court is as free to uphold such principles by its decrees and judgments as was Lord Mansfield when he said (in *Moses* v. *Macferlan,* 2 Burr 1005, 1008 [97 Eng Rep 676]) that "if the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract."

The situation confronting us is not new to the law. In *Puget Realty Co.* v. *King County,* 50 Wash 349 (97 P 226), plaintiff owned 12.22 acres of land. Due to a mistake of fact ("The overassessment was caused by the fact that the officer made a mistake as to the quantity of land he was assessing." [p 351]) it was estimated to contain 22.22 acres and assessed accordingly. Plaintiff (p 350) "was refused repayment of the amount it had overpaid, on the theory, apparently, that the county commissioners were without power to return the money." The supreme court, however, allowed recovery, in terms clearly applicable to this case, stating in part (p 352):

"This was a mistake honestly made, it is true, but its effect upon the appellant is just the same as it would have been had it been made dishonestly and with the purpose of defrauding it. Why, then, should it not have the same relief? We think it should."

The same principle was applied in *In re Wing,* 162 Misc 551 (295 NYS 336), involving a mistake made as to a lady's age, as a result of which a larger tax was paid than was justified by the true facts.

In vacating "so much of the *pro forma* taxing order as is based upon this mutual mistake of a material fact" the surrogate held, in part, as follows:

"The principle underlying this rule is in origin the equitable one that 'whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it' *(Roberts v. Ely,* 113 NY 128, 131 [20 NE 606, 607]; *Hoyt v. Wright,* 237 App Div 124, 127 [261 NYS 131], see, also, *Belden v. State,* 103 NY 1, 8, 9 [8 NE 363]), but its application has long since been extended to legal tribunals as is demonstrated by the fact that as early as 1832 it was held that assumpsit would lie for the recovery of money credited by mistake *(Tinslar v. May,* 8 Wend [NY] 561).

"In perhaps a majority of the pronouncements hereinbefore cited, the determinations have coupled mistake and fraud in the same category, no doubt on the theory that the attempted retention of money or property which in equity and good conscience belongs to another is in effect a constructive fraud on such other."

The Wisconsin case cited by appellee, and distinguished by Mr. Justice KELLY, *State, ex rel. Pabst Brewing Company,* v. *Kotecki,* 163 Wis 101 (157 NW 559), proceeds upon a similar theory. "The facts alleged," said the court (p 104), "show clearly that the payment of this amount was the result of a mistake of fact due to an error committed by the city officers and plaintiff's payment thereof as a lawful tax constitutes, under the circumstances, a fraud, which entitles plaintiff to recover." The California court, in *Pacific Coast Co.* v. *Wells,* 134 Cal 471 (66 P 657), was faced with a similar issue. "The assessor (p 472), believing that mistake had been made in the process of subtraction, drew his pen through the figures $9,189 and wrote over them '$109,189.' " As a result the taxpayer paid a larger sum as taxes

than was properly due and, upon discovery of the error, demanded refund. The supreme court of California held, in part, as follows (p 473):

"We think the facts stated entitled the petitioner to the writ, and that the court erred in sustaining the demurrer. The money so paid to the county as taxes was not due from petitioner. It was the amount of taxes upon an assessment of $100,000, on property that had no existence. It was an assessment made by the assessor in changing the footings of petitioner's assessment. It was paid without consideration, and the city and county have no right to it. Petitioner has paid all its just taxes, and this sum in addition. No doubt, if the assessor had called the attention of petitioner to the statement it had given in, the footings would never have been changed. It was a clerical error that could easily have been explained. When the attention of the assessor was called to it, he recommended that the mistake be corrected. The board of supervisors, representing the county, after investigation, made an order to correct it. Shall the city and county keep the $1,625 regardless of all this? It surely would be in violation of honesty and fair dealing for them to do so. Is it in violation of law for them to refund it? We think not."

A well-expressed distillation of many of these cases is found in *Betz* v. *City of New York,* 119 App Div 91 (103 NYS 886), in which case the court, in affirming recovery by the taxpayer, said (p 92):

"The payment was made under a mutual mistake of fact. The mistake originated with the city's officials. * * * For the city to keep the amount paid is wholly unjustifiable from any moral standpoint. An individual who should try to do the like would be deemed a dishonest man."

In certain of the cases cited (*e. g., Pacific Coast Co.* v. *Wells, supra; State, ex rel. Pabst Brewing*

*Company,* v. *Kotecki, supra*) a statute authorized the refund of taxes "illegally collected," or unlawfully assessed against the taxpayer. Are we to conclude that without such a statute we are helpless? That is to say, is plaintiff's legal right to restitution from a municipality enforceable only by virtue of some statute?

The question would seem to answer itself. Illegality, inequity, unlawfulness, we encounter daily. It is the reason for our being that on such encounter we remedy the illegality, do equity, and curb unlawfulness. It matters not (save as we are restrained by constitutionally-derived prohibitions, many of which are related to the concept of sovereignty) that the offender is an arm of government. We agree with Chief Justice Brown of the Minnesota court (*First National Bank of Goodhue* v. *Village of Goodhue,* 120 Minn 362 [139 NW 599, 43 LRA NS 84]) that "We are unable to assign a good reason for differentiating between the private and the municipal corporations as respects the rule of justice and common honesty." Excesses of governmental power, abuses of governmental authority, are not new to mankind and we are neither speechless nor helpless with respect thereto without statute. It is precisely in this situation, where the citizen stands before us opposed by all the panoply of power, that we are most acutely conscious of our historic function. It is my opinion that under existing Michigan law we require no legislative authority to order the restitution of moneys paid to and received by the taxing authorities through mutual mistake of fact. It is enough that we have no valid statute forbidding it. It seems beyond question that the excess moneys were paid involuntarily. One who pays 10 times as much in taxes as he should, because of a mutual mistake of fact, can in no real sense be said to be paying "voluntarily". He pays in ignorance, under

a misapprehension of the true facts. Had he known the facts, the tax paid would have been only the sum authorized. The point need not be labored. The simple statement of the South Dakota court in *Mc-Ardle* v. *Robertson,* 70 SD 545, 547 (19 NW2d 576) well expresses the law: "A tax payment is not voluntary when made under mistake of fact." The court then continues, after citing cases, "When such a mistake of fact has been made the taxes may be recovered." We find a similar ruling in Ohio (*In re Wampler's Estate,* 103 NE2d 303), an action to recover a portion of an inheritance tax, the deceased having owned only a half interest rather than the entire interest upon which the tax was determined. In affirming the order refunding the excess so paid, the court held, in part (p 309), "The inheritance taxes sought to be recovered in the instant case were paid under a mistake of fact. Payment of taxes under a mistake of fact (as distinguished from a mistake of law) has been held not voluntary."

Having such an involuntary payment, our law, also, is clear that recovery thereof may be had. It was a quarter of a century ago that we held in, *Blanchard* v. *City of Detroit,* 253 Mich 491, 495, that:

"If payment of a tax is involuntary, in the absence of statutory provision to the contrary, it may be recovered, although there is no express statutory provision therefor.

" 'It is a well-settled rule that "money got through imposition" may be recovered back; and, as this court has said on several occasions, "the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." ' *Ward* v. *Love County,* 253 US 17 (40 S Ct 419, 64 L ed 751), citing cases."

The Restatement of Restitution, likewise, is clear on the question before us. We find in section 19 thereof that:

"A person who has paid money to another because of an erroneous belief induced by a mistake of fact that he was thereby performing in whole or in part a duty to the payee, other than a contract duty, is entitled to restitution of the amounts so paid if such duty did not exist."

Lest it be thought that none of these wholesome rules of common honesty apply to governmental units, we quote comment (h) upon the above section in its entirety:

"h. Public duties. Subject to the rules as to the immunity of the State from liability, the rule stated in this section applies to a payment made because of a mistake of fact as to the existence of a public obligation, as where a person pays for the second time a tax due from him personally, having forgotten the initial payment, or makes payment of a fine in ignorance that his attorney has already paid. For the rules where a tax is paid under mistake of law or under duress, see §§ 45 and 75."

The last section above quoted (section 75), to be carefully distinguished (as does the Restatement) from the case before us, is that relating to the recovery of "void taxes and assessments." Such cases normally involve payments made under mistake of law, which, both for historical (see Lord Ellenborough's "monstrous mistake" in *Bilbie* v. *Lumley,* 2 East 469 [102 Eng Rep 448]) and practical reasons, have received fairly short shrift in the courts. Confusion between such cases, and the case before us, involving one of the simplest of the mistakes of fact (double, or manifold, payment of the same tax) is noted in portions of the briefs before us. Here the person paying (*i. e.,* "where a person pays for the

second time a tax due from him personally") is clearly and undisputably entitled to restitution of the amount so paid, whatever the situation may be as to "void and illegal taxes." The 2 situations involve different policy considerations, are differently resolved in the cases and treatises, and should not be muddled by us.

The opinion of Mr. Justice KELLY states that: "Contrary to the theory that we should apply the general equitable rules in a taxation case of this nature are the cases of *Langford* v. *Auditor General,* 325 Mich 585, and *Bateson* v. *City of Detroit,* 143 Mich 582." Two comments should be made with respect to this statement. First of all, we constantly employ our equitable powers in taxation cases. No field of the law is immune from the reach of the chancellor's arm. If we are shown fraud, oppression, or inadequacy of legal remedy, and a valid statute does not prohibit a particular remedy, we do not hesitate to use our equitable powers (note injunctive relief in a tax case in *Forest Hill Cemetery Co.* v. *City of Ann Arbor,* 303 Mich 56). And such exercise of equitable power and jurisdiction is in no sense contrary to the well-established principle that governmental powers of taxation are controlled by constitutional and statutory provisions, but, rather, complementary to it. Moreover, with respect to the cases cited, neither *Bateson* nor *Langford* can properly be construed as a "case of this nature." Neither involved a payment many times over of the tax upon specific property. In the *Bateson Case* we have the familiar situation where a city landowner pays taxes on lands owned by another. The difficult question in such a case is whether the payor, if he is to have recovery, should have it from the city or from the other owner. We decided, in *Bateson,* that he could not look to the city. The decision is supportable. The city has received its taxes, not 10 times over, or

even twice over, but once. It may well be that the real issue is between the 2 adjoining owners. The *Bateson Case,* we note, is careful to exclude the case of double payment of the same taxes. "No claim was made," noted the Court (p 583), "that any other person paid the taxes thereon." If some other person had so paid, if the city thus had collected double (or 10-fold) taxes on the same property, we would approach, to some degree, the case at bar. The *Langford Case* is even further removed from our facts. The issues involved may be gathered from the Court's quotation of "controlling question" stated by appellees (pp 588, 589):

" '(1) Where appellees lost their opportunity to secure timely redemption of their property from the 1942 annual tax sale through intervention of a local taxing unit, by their good faith reliance upon an official county treasurer's tax certificate issued to them * * * stating erroneously that according to his records the State held no tax deed or lien, does equity and justice require restoration to appellees of the opportunity to secure such redemption?' "

The case does not even remotely involve the issue of multiple payment, nor is its broad language applicable thereto. It quotes *Lovett* v. *City of Detroit,* 286 Mich 159, a case in which it was held that the city could collect its taxes on certain property, even though the treasurer had erroneously told the landlord that the taxes had been paid (thereby allegedly causing him not to sue the tenant for the same). The "pivotal question," said the Court (p 161), was whether the city could "be estopped by the act of its city treasurer." The Court held, as quoted by Mr. Justice KELLY, that "The collection of duly levied taxes for governmental purposes is a governmental function" and that the collection officer could not work an estoppel against the city. I can see no rea-

sonable connection between the estoppel claimed in *Lovett* and the issue in the case before us. It is not enough that both involve taxes. It is not enough that *Lovett* involved a unilateral mistake by the city treasurer. The missing ingredient is the precise issue before us—the fact of overpayment, excess payment, as a result of which the municipality reaps a harvest of riches at the expense of the taxpayer. I agree with the *Lovett Case* that "The collection of duly levied taxes for governmental purposes is a governmental function." Of course it is. But when a tax is entered (in the tax and assessment rolls) in 10 times its proper sum by an obvious arithmetical error, can such be said to be a "duly levied" tax? The case of *General Discount Corp.* v. *Detroit,* 306 Mich 458, is likewise inapposite. It involved a mistake of law by the assessors as to the intangible belongings to a foreign corporation and its tax liability therefor.

Before our Bench, then, stands a taxpayer who has approached us in assumpsit, the form of action through which is heard, on the law side of the courts, the voice of the conscience of the chancellor, the form of action through which, on the same side of the courts, were developed the great restitutionary doctrines. This taxpayer shows us that he is the victim of a fraud, rendered hardly more palatable by the adjective "constructive." Mr. Justice KELLY would deny relief, stating that it "would require this Court to exercise legislative prerogatives." I cannot accept the result or the reasoning. This is the Supreme Court of Michigan speaking, the possessor of all the historic powers of law and equity, the keeper of the conscience of our sovereign people, a constitutional court of plenary powers, not a legislative court of enfeebled and circumscribed jurisdiction. What we are faced with is a simple case of constructive fraud. If, in such a case this Court must

stand by with eyes downcast, protesting our impotence as we explain to this victim that we cannot "exercise legislative prerogatives," then the arm of justice has indeed withered and its conscience shriveled. Our constitutional duties may not be thus easily abandoned. Retreat before fraud, actual or constructive, carries us down a path forbidden to our feet. Under the clearest principles of good conscience and fair dealing this plaintiff should have restitution as prayed.

Judgment should be affirmed. No costs, a public question.

BLACK, J., concurred with SMITH, J.

EDWARDS, J., took no part in the decision of this case.