No. 14,744.

ARMSTRONG, STATE TREASURER *v.* DRISCOLL CONSTRUCTION COMPANY.

(110 P. [2d] 651)

Decided February 10, 1941.

Mr. BYRON G. ROGERS, Attorney General, Mr. OLIVER DEAN, Assistant, Mr. PHILIP A. DERGANCE, Assistant, for plaintiff in error.

Mr. HOMER S. McMILLIN, Mr. HORACE N. HAWKINS, Mr. PAUL F. IREY, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THE Driscoll Construction Company, defendant in error here, plaintiff below, brought this action to recover from plaintiff in error, defendant below, a refund of tax paid on gasoline used and consumed by it in state highway construction. General and special demurrers to the complaint were interposed, both of which were overruled. Election was made to stand on the demurrers, and judgment was accordingly entered in favor of defendant in error. Reversal is sought on a writ of error. Herein reference will be made to plaintiff in error as the treasurer, and to defendant in error as the company.

The question presented for determination is whether, under the allegations of the complaint, the company was entitled to a refund notwithstanding the provisions of the statute, paragraph 2, section 383, chapter 16, '35 C.S.A., 1933 S.L., page 720, section 3, which provides that applications for refunds "must be made within sixty (60) days after the purchase or loss of the motor fuel, must be supported by the affidavit of the purchaser, accompanied by the original paid invoice or sales receipt * * *." Application by the company for the refund was not made within the sixty days, and not until approximately one year after purchase of the gasoline.

We here are concerned with one of the most serious problems of government; namely, the refunding of money to private individuals by state agencies. That it has been a serious problem in Colorado is indicated by the legislative history relating to this subject. The first gasoline tax law (Session Laws of 1919, chapter 168) made no provisions for "refunds," but authorized the state treasurer "to repay any taxes erroneously collected." The act levied a tax on any fluid product of petroleum offered for sale or used for power purposes "in propelling motor vehicles." The executive branch of the government, in construing this act, held that petroleum products used in propelling farm tractors were not taxable, and it became the practice of the retailer to pay the tax which he collected from the purchaser to

the state, leaving the one who used gasoline for a purpose other than propelling a motor vehicle on the highways to apply to the state treasurer for a refund, free from any conditions or time limitations. This practice of allowing repayment continued until 1927, when the General Assembly enacted chapter 140, S.L. '27. This act provided for licensing distributors of petroleum products, and provided for the rendition of monthly statements of all gasoline sold, to the inspector of oils, who had to transfer daily his tax collections to the state treasurer, who, in turn, not later than the twentieth of every month, was required to pay seventy per cent to the State Highway Fund and thirty per cent to the several counties. With reference to refunds, the 1927 act provides: "Section 3. * * * Provided that the tax provided for by this act when paid on any gasoline used for a purpose other than the propelling of motor vehicles on public streets or highways shall be refunded by the State Treasurer to the user thereof on application within sixty days after the purchase thereof, supported by affidavit, and accompanied by the original invoice for said gasoline, and filed with and approved by the State Inspector of Oils; said application to be made on forms approved and furnished by the State Inspector of Oils. * * * ."

This provision for refunds was reenacted, in substance, in 1929, 1931 and 1933, except that the 1929 act also stipulated that the application "shall" be made within sixty days. In the 1931 amendment the word "shall" was changed to "must," which phraseology continued in the 1933 act and is the law at the present time. '35 C.S.A., c. 16, §383. Legislation subsequent to the 1927 act provided that the application for refunds "must be accompanied by the original paid invoice." The act of 1927 did not contain the word "paid," but required only "the original invoice."

That the problem before us has had the benefit of considerable legislative experience cannot be questioned.

The sixty-day limitation undoubtedly was a legislative attempt to prevent the filing of stale claims, and other corrupt practices that so often materialize when state governmental agencies are authorized to make refunds. There is no contention by counsel for the company that in order to ascertain the legislative intent we should construe the word "must" to mean "may." It must be conceded that in the enforcement of the act such a construction would only lead to further chaos and clearly was not the legislative intent.

The tax from which relief is here sought is imposed "on all motor fuel sold, offered for sale or used in this state for any purpose whatsoever." '35 C.S.A., c. 16, §382. Refunds of the tax, therefore, are a matter of grace, and the procedure outlined by section 383, supra, to obtain the same must be strictly followed. The right to a refund rests solely on the statute, which does not authorize any excuse for delay in filing the application therefor.

The company relies upon equitable principles to affirm the judgment. It is not difficult to sympathize with it in view of the position in which it finds itself, but under circumstances such as these "equity follows the law." To absolve the company from compliance with the law and permit the application of equitable principles is nothing less than unwarranted judicial legislation. It is asserted that owing to a certain rule of construction or practice in connection with section 383, supra, providing for refunds by the state treasurer—of which the company had no knowledge—the treasurer is estopped from enforcing the time limit of sixty days in filing the application. No copy of such a rule appears in the record. The alleged construction or rule of practice is set out in exhibit A attached to the complaint, but it, in reality, is in the nature of a legal argument directed to the attorney general, seeking to obtain from him an opinion favorable to the company. The alleged rule of construction permitted "a taxpayer, who for any

reason was unable within the sixty days from the date of delivery of the gasoline to pay for the same and present to the refund department a fully completed application with original invoices marked paid attached, to present at the refund department within said sixty days a partially completed application blank without the original invoices or evidence of payment attached and have the same stamped with a dated reception stamp and take the same away with him and at some future date, when he has been able to make payment for said gasoline, to complete said applications and attach thereto the original invoices together with evidence of the payment thereof and have the refund allowed as though made at the time when the said reception stamp was placed on the application blank." It is difficult to determine from the briefs whether it is claimed by the company that this so-called rule controls the determination of the issues herein. Assuming that it does play a part, what is the power of the state treasurer to make and adopt rules? For the conferment of this power we look to section 395, of said chapter 16, which reads in part as follows: "It is hereby made the duty of the state treasurer to see that all of the provisions of this article affecting the collection of the motor fuel taxes herein imposed, are enforced and obeyed, and that all violations thereof are promptly prosecuted, and all taxes and penalties are collected, and to that end the state treasurer shall have power and is authorized to make and adopt such reasonable rules and regulations relating to the administration and enforcement of the provisions of this article as may be deemed expedient, and such rules and regulations to govern his proceedings and to regulate the mode and manner of all investigations and hearings, and to alter and amend the same."

Under this section, the authority to make and adopt rules is limited, to the end "that all of the provisions of this article affecting the collection of the motor fuel taxes herein imposed, are enforced and obeyed,

and that all violations thereof are promptly prosecuted, and all taxes and penalties are collected." The rule—if it can be dignified as such—upon which reliance is placed is of no assistance in the enforcement of obedience to the act. If it does anything, it permits an evasion of the express provisions of the law in the matter of procedure to obtain refunds. There is no authority vested in the state treasurer to adopt such a rule. The promulgation of rules and regulations to supplement the enforcement and administration of a legislative act is limited thereby, and cannot be inconsistent with its express provisions. The adoption of a rule such as we have before us is an exercise of legislative, not administrative, power. It has no basis in law, and even if it did, the company did not comply with it, in that it failed to file any application for the refund within sixty days from the date of purchase. What it proposed was permission to delay the filing of paid invoices. Ignorance of the rule is no excuse. No authority is cited that it is. How this purported rule could operate as an estoppel against the treasurer is not clearly disclosed, and we have held "that the doctrine of estoppel cannot be invoked against any governmental agency, acting in its public capacity." *McKay v. Public Utilities Commission,* 104 Colo. 402, 419, 91 P. (2d) 965; *Edwards v. Guthner,* 106 Colo. 209, 103 P. (2d) 6. The authorities cited by the company are not in point. None is cited to sustain an estoppel in pais in the matters concerning governmental agencies. Assuming, but not deciding, that estoppel applies, what facts are here presented which would justify the application?—The unfortunate death, says the company, of three of its officers more than a year before the purchase of the gasoline in question. The lack of managerial ability on the part of the personnel of the company in looking after its business, after the death of the three officers, cannot be held to be an adequate excuse. Surely, the state cannot be held responsible for the failure of proper conduct of private business. Physical and mental

incapacity is no excuse. *Weidensaul v. Industrial Commission,* 107 Colo. 28, 108 P. (2d) 234.

It is asserted that the state treasurer owed a duty to the company to inform it as to the existence of the alleged rule of construction. This is a novel doctrine. The duty, if any, rested upon the purchaser of gasoline, to ascertain what, if any, rules of construction were in effect relating to refunds. No state official can be estopped from enforcing a law merely because of any unlawful practice. As already stated, the gasoline tax is imposed upon all motor fuel sold, offered for sale or used for any purpose whatsoever. Refund is purely a matter of legislative grace. Experience led the legislature to solve the refund problem by requiring certain "must"-acts before refund could follow. Any other construction would nullify the law as to refunds. There would be perpetual confusion and uncertainty in the accounts. Prompt allocation between highway department and counties would not be possible. A maladjustment would continue to exist, which might easily lend itself to improper and discriminatory practices. If the terms under which refunds may be granted under section 383, supra, are harsh, the resort is to legislative, not judicial, relief. *Miller v. Industrial Commission,* 106 Colo. 364, 105 P. (2d) 404.

The court committed error in not sustaining the demurrers. The judgment is reversed and the cause remanded with directions to sustain the demurrers.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD dissent.