LANGFORD *v.* AUDITOR GENERAL.

**1.** TAXATION—TAX SALES—REDEMPTION—TITLE OF STATE.

Where real estate is bid in by the State at tax sale and there is no redemption therefrom within the following year, the State becomes the owner when the auditor general deeds the land to the State.

**2.** SAME—DEFERRAL OF SCAVENGER SALE—PURCHASER.

Plaintiff purchasers of land from an original owner may claim no benefit from the fact that the land was withheld from scavenger sale of tax-reverted lands for 2 years after State acquired title but did sell it at the next sale thereafter held, even though plaintiffs paid taxes on the land for such 2 years.

**3.** SAME—PAYMENT OF TAXES BY PARTY OTHER THAN OWNER—TITLE.

Payment of taxes on land, title to which is held by one other than the party making the payment, cannot vest the latter party with title to the taxed property.

**4.** SAME—CERTIFICATE OF COUNTY TREASURER AS TO PAYMENT OF TAXES—PURPOSE OF STATUTES.

The purpose of the statutory provision requiring county treasurer's certificate that taxes for the last five years have been

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation, § 1073.
[2, 8, 9] 51 Am Jur, Taxation, §§ 51, 966.
[4, 5, 9] 51 Am Jur, Taxation, § 961.
[4, 5, 9] Effect of certificate or statement of treasurer or other public official regarding unpaid taxes or assessments against specific property. 107 ALR 568.

paid as a condition precedent to recording of conveyance by the register of deeds is to expedite the collection of taxes and not to obligate an official for the State to certify in any particular the title to the land in question (CL 1948, § 211.135).

5. SAME—TAX-DELINQUENT LAND—STATE'S TITLE—REDEMPTION.
After the title to tax-delinquent lands becomes absolute in the State, neither the auditor general nor the county treasurer has authority to accept the defaulted taxes with interest and penalties thereon and thereupon release or nullify the State's title to the property, since such right of redemption terminates at the expiration of one year from the tax sale of the property.

6. SAME—DEFERRAL OF SCAVENGER SALE—REDEMPTION.
Where deferral of scavenger sale of tax-reverted lands was not effected because of request of taxing unit, no right of redemption accrued to grantees of alleged holder of original title.

7. SAME—CONSTITUTIONAL LAW—STATUTES—EQUITY.
Since governmental powers of taxation are controlled by constitutional and statutory provisions, it is not possible to adjudicate issues arising under taxation laws by the general application of equitable principles.

8. SAME—OFFICERS—MISTAKE—ESTOPPEL—EQUITY.
The collection of duly levied taxes for governmental purposes is a governmental function and the collection officer cannot by mistake or misinformation, work an estoppel, enforceable in a court of equity.

9. SAME—COUNTY TREASURER'S CERTIFICATE—MISTAKE—REDEMPTION—SCAVENGER SALE.
Where 1939 taxes were not paid and auditor general's deed to State was recorded in August, 1943, plaintiffs who were grantees under a warranty deed from one alleged to be an original owner, bearing an October, 1943, date and recorded in December, 1943, after county treasurer gave an erroneous certificate that taxes for last 5 years had been paid, and property was sold at February, 1946, scavenger sale to individual defendants, plaintiffs were not entitled, because of such erroneous certificate to have quitclaim deed to such defendants set aside, since the time for redemption from tax sale had expired (CL 1948, § 211.135).

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted June 14, 1949. (Docket No. 54, Calendar No. 44,461.) Decided September 8, 1949.

Bill by George Robert Langford and wife against Murl K. Aten, Auditor General of the State of Michigan, to cancel a deed and for conveyance to plaintiffs. Decree for plaintiffs. Defendants Auditor General and State Land Office Board appeal. Reversed.

*Hooper & Blashfield,* for plaintiffs.

*Stephen J. Roth,* Attorney General, and *Elbern Parsons,* Chief Assistant Attorney General, for defendants and appellants.

North, J. By the bill of complaint herein plaintiffs seek cancellation of a quitclaim deed given by the State land office board to defendants Gomberg, and to require the State to convey to plaintiffs the property described in the deed. The property involved is a vacant lot in the city of Ann Arbor, Washtenaw county, Michigan, and may be sufficiently identified herein as lot 19 of Long Shore Heights subdivision. After issue joined and hearing in the circuit court the relief sought by plaintiffs was decreed, conditioned upon plaintiffs paying the 1939 defaulted tax with interest and penalties thereon. Defendants, auditor general of Michigan, Murl K. Aten, and the State land office board, have appealed. The material facts are stipulated. Prior to June 3, 1943, Myrtie Langford Moore Hendershot is asserted to have become the fee owner of this lot 19. As the result of default in payment of the 1939 tax the lot was sold and bid in by the State of Michigan at the May, 1942, tax sale. There was no redemption, and on June 3, 1943, the auditor general deeded the

property to the State of Michigan. The State there-upon became the owner of lot 19. *Darby* v. *Free-man,* 304 Mich 459, 467; *Lowrie & Webb Lumber Co.* v. *Ferguson,* 312 Mich 331. The State's deed was recorded August 10, 1943.

On October 22, 1943, Myrtie Langford Moore Hen-dershot gave a warranty deed of this lot to plain-tiffs, and they have been in possession since that date. They recorded their deed December 8, 1943. On that date plaintiffs presented their deed to the Washtenaw county treasurer "for the purpose of securing a statement as to the status of taxes on said property and for the purpose of paying any taxes then unpaid thereon." The county treasurer erroneously issued the statutory certificate (CL 1948, § 211.135 [Stat Ann 1947 Cum Supp § 7.194]) wherein he stated he had examined the tax records in his office and "that it does not appear from said records that the State of Michigan or any individual holds any tax deed or lien upon said premises for a period of 5 years preceding the date of said deed."

From the foregoing it appears that prior to the date of plaintiffs' deed (October 22, 1943) the State of Michigan on June 3, 1943, had become the abso-lute owner of the property here involved, and its deed was recorded August 10, 1943. It is under such circumstances that appellants contend plaintiffs are not entitled to any relief and that their bill of com-plaint should be dismissed. But plaintiffs and ap-pellees state the issue as follows and stress addi-tional facts about to be noted:

"Appellees claim there is but one controlling ques-tion. (1) Where appellees lost their opportunity to secure timely redemption of their property from the 1942 annual tax sale through intervention of a local taxing unit, by their good faith reliance upon an official county treasurer's tax certificate issued to them * * * stating erroneously that according to

his records the State held no tax deed or lien, does equity and justice require restoration to appellees of the opportunity to secure such redemption?"

The additional facts stressed by plaintiffs are as follows. Lot 19 was withheld from the sales of tax-reverted lands in 1944 and 1945, but at such sale in February, 1946, this lot was sold for $700 to defendants Gomberg. No attempt was made to match the purchasers' bid. In the meantime the city of Ann Arbor for 1944 and 1945 erroneously and unlawfully assessed this State-owned lot to plaintiffs, and they paid the taxes as follows: August 15, 1944, $40.67; December 30, 1944, $5.60; August 15, 1945, $39.19; and December 31, 1945, $7.39. Plaintiffs, not having received tax notices for 1946 or 1947, on or about February 11, 1948, upon inquiry from the Washtenaw county treasurer, learned for the first time that defendants Gomberg claimed title to lot 19.

Admittedly, as stated in plaintiffs' brief, this is a "rather unusual case." But the controlling question of law is this: When or how did plaintiffs acquire title to lot 19 or any right therein?

Plaintiffs can claim no benefit from the fact that this lot was withheld from the State land office board's sale of tax-reverted lands in 1944 and 1945, but did sell it at the February, 1946, sale. See *Blunt* v. *Auditor General,* 324 Mich 675. It is elementary law that payment of taxes on land, title to which is held by one other than the party making the payment, cannot vest the latter party with title to the taxed property. Nor are plaintiffs entitled to relief on the ground most stressed—*i. e.,* that they were misinformed by the certificate of the county treasurer as to there being any outstanding tax deed or lien which was given or accrued within the next preceding 5 years. The purpose of the statute requiring the certificate of the county treasurer is the

expedition of the collection of taxes. *Van Husan* v. *Heames,* 96 Mich 504. It is not the purpose of this statute to obligate the State or any of its officials to certify in any particular the title of the land in question. Even if the county treasurer, instead of having made an erroneous certificate, had revealed the true state of the tax condition of lot 19, plaintiffs could have done nothing about it at that time and would not have been benefited thereby. As matters then stood neither the auditor general nor the county treasurer had the authority to accept the defaulted 1939 tax with interest and penalties thereon and to thereupon release or nullify the State's title to the property. The right to so redeem from the tax terminated at the expiration of 1 year after the tax sale of the property held in May, 1942.

Plaintiffs rely much upon our decision in *Oakland County Treasurer* v. *Auditor General,* 292 Mich 58. But that case is not in point with the instant case for the reason that in the cited case the taxing governmental unit intervened and formally requested the State land office board to withhold the property from the regular State land office board sale, which was done and timely thereafter the taxes were paid by the landowner and accepted by the taxing unit. The opportunity to thus redeem the property was afforded solely because the taxing unit requested the withholding of the property from the regular sale of such lands; but in the instant case no such steps were taken, and consequently no such right of redemption accrued to plaintiffs, even if they otherwise might have been entitled thereto, which obviously they were not under the facts of this case.

Governmental powers of taxation are controlled by constitutional and statutory provisions. *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659. Hence it is not possible to adjudicate issues arising under taxation laws by the general application of equitable

principles. This phase of the law seems to have been overlooked by plaintiffs who stress their right to relief in the instant case on equitable, rather than legal, grounds.

"The collection of duly levied taxes for governmental purposes is a governmental function and the collection officer cannot, by mistake or misinformation, work an estoppel, enforceable in a court of equity. The fact, and not the misinformation, controls." *Lovett* v. *City of Detroit,* 286 Mich 159.

The decree entered in the circuit court is reversed and a decree may be entered in this Court dismissing the bill of complaint. Appellants may have costs of both courts.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.