559 P.2d 756

**V–1 OIL COMPANY, a corporation, and Blair Dean, Inc., a corporation, Plaintiff-Appellants,**

v.

**STATE TAX COMMISSION of the State of Idaho, Defendant-Respondent.**

**No. 11960.**

Supreme Court of Idaho.

Jan. 28, 1977.

Edward W. Pike and Jay B. Gaskill, of Albaugh, Smith & Pike, Idaho Falls, for plaintiff-appellants.

Wayne L. Kidwell, Atty. Gen., J. Michael Kinsela, Asst. Atty. Gen., Boise, for defendant-respondent.

BAKES, Justice.

This action was commenced by the plaintiff appellants, V–1 Oil Company, a gasoline retail dealer, and Blair Dean, Inc., a gasoline wholesale dealer, against the defendant respondent State Tax Commission for the recovery of motor fuel excise taxes which V–1 and Blair Dean allege to have paid pursuant to the requirements of a statute which they contend was ineffective for a three month period during which the statute was enforced by the Tax Commission. The controversy arose because 1972 I.S.L., ch. 209, which was approved on March 22, 1972, amended then existing I.C. § 49–1210 (which has since been repealed) by raising the motor fuel excise tax from 7¢ per gallon to 8½¢ per gallon and provided that the act should be in full force and effect on and after April 1, 1972. However, the act did not include an emergency clause, i. e., a declaration that an emergency existed and that because of the emergency the act would become effective earlier than it would become effective in the absence of an emergency. Because chapter 209 provided that its effective date was April 1, 1972, which was only seven days after March 25, 1972, the date the legislature adjourned, chapter 209 was obviously in conflict with Art. 3, § 22, of the Idaho Constitution, which provides:

"§ 22. *When acts take effect.*—No act shall take effect until sixty days from the end of the session at which the same shall have been passed, except in case of emergency, which emergency shall be declared in the preamble or in the body of the law."

Chapter 209 also conflicted with I.C. § 67–510 (which had been amended earlier in the session in a bill with an emergency clause and which had become effective on March 17, 1972), which provides:

"67–510. *Statutes and resolutions— When effective.*—No act shall take effect until July 1 of the year of the regular session or sixty (60) days from the end of the session at which the same shall have been passed, whichever date occurs last, except in case of emergency, which emergency shall be declared in the preamble or body of the law.

. . . ."

On April 14, 1972, V–1 Oil and Blair Dean filed suit in the district court alleging that they "pay, collect and remit" motor fuel excise taxes to the State Tax Commission, and contending that the requirement of chapter 209 that they begin paying, collecting and remitting an 8½¢ per gallon motor fuel excise tax on April 1, 1972, rather than on July 1, 1972, was in violation of the constitutional and statutory provisions quoted above. They further sought from the district court a declaratory judgment that the effective date of chapter 209 would be July 1, 1972, and that the district court enter judgment allowing them a refund for all increased motor fuel taxes they had paid or would pay between April 1, 1972, and June 30, 1972, upon the gasoline they had sold or would sell in that period.

This action was still pending in the district court when the 1973 legislature met. That legislature enacted ch. 280, 1973 Session Laws, which contained the following provisions intended to "cure" the previous legislature's failure to include an emergency clause in the motor fuel excise tax increase act:

"Be It Enacted by the Legislature of the State of Idaho:

"SECTION 1. The legislature hereby declares that chapter 209, laws of 1972, was intended to tax at the rate of eight and one-half cents (8½¢) per gallon all motor fuels received on and after April 1, 1972, and further declares that motor fuels received on and after April 1, 1972, were to be so taxed by the retroactive application of chapter 209, laws of 1972, to motor fuels received on and after April 1, 1972.

"SECTION 2. That Section 2, Chapter 209, Laws of 1972, be, and the same is hereby amended to read as follows:

"SECTION 2. This act shall be in full force and effect on and after April 1, 1972. Motor fuels received on and after April 1, 1972, shall be taxed at the increased rate set forth in this act by the retroactive application of this act, if such motor fuels would not otherwise be taxed at the increased rates set forth in this act.

"SECTION 3. An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in full force and effect on and after its passage and approval and retroactively to April 1, 1972." (Underlined material added by 1973 act).

The district court held that the 1973 amendment retroactively "cured" the omission of the emergency clause from the 1972 session law, and concluded that the 1973 amendment precluded the plaintiffs from making any claim for a refund and granted the State Tax Commission's motion for summary judgment.

However, the 1973 amendment did not cure the defect in the 1972 act. It is clear from reading the 1972 act that the legislature intended that the 1½¢ increase in the motor fuels tax should take effect on and after April 1, 1972. What the 1972 act lacked was a declaration of emergency in order to comply with Art. 3, § 22, of the Idaho Constitution. The 1973 amendment did not cure the defect in the 1972 act by attempting to add, retroactively, an emergency clause, assuming that a subsequent legislature could constitutionally do that. What the 1973 amendment did was to spell out in even greater detail that the legislature intended that the increase in the motor fuels tax should take effect on April 1, 1972, something which the 1972 act had already made clear. The 1972 act, even after the purported retroactive 1973 amendments, still does not contain an emergency clause in order to satisfy the requirements of Art. 3, § 22, and therefore the 1973 amendment did not "cure" the defect in the 1972 act. The fact that the 1973 act contained an emergency clause justifies, arguably, the conclusion that the 1973 amendments to the 1972 act were retroactive to April 1, 1972. But the 1972 act, after applying the 1973 amendments to it retroactively, still does not contain an emergency clause, and therefore does not comply with Art. 3, § 22, of the Idaho Constitution.

It is clear to us, however, that chapter 209 of the 1972 Session Laws, together with chapter 280 of the 1973 Session Laws, do constitute an implied repeal of I.C. § 67–510, which provides in part that "no act shall take effect until July 1 of the year of the regular session . . .", at least to the extent that I.C. § 67–510 would otherwise apply to the effective date of chapter 209 of the 1972 Session Laws. *See Teamsters, Chauffeurs, Warehousemen & Helpers, Local 45 v. Montana Liquor Control Board*, 155 Mont. 300, 471 P.2d 541 (1970); *cf. Paullus v. Liedkie*, 92 Idaho 323, 442 P.2d 733 (1968). Therefore, we conclude that, based upon Art. 3, § 22, of the Idaho Constitution, the effective date of the 1½¢ motor fuels tax increase provided for in the chapter 209 of the 1972 Session Laws, even after the purported retroactive amendment contained in chapter 280 of the 1973 Session Laws, was sixty days after the end of the session in which the same was passed, which in this case would have been May 24, 1972. The State Tax Commission had no authority to collect the 1½¢ increase prior to that time.

The State Tax Commission argues, however, that even assuming that the tax increase was not retroactive to April 1, 1972, that neither V–1 Oil Company nor Blair Dean, for a variety of reasons, is entitled to

recover for the motor fuels excise taxes which they alleged to have paid between the months of April 1, 1972, and May 24, 1972. We will deal with their respective claims separately.

### CLAIM OF BLAIR DEAN, INC.

 The disposition of the claim of Blair Dean, Inc., requires an analysis of the Idaho motor fuels tax as it existed on April 1, 1972. At that time the basic tax imposed on motor fuels was an excise tax upon the licensed "dealer" as defined in I.C. § 49–1201(1)(d) who first "receives" the gasoline within the state of Idaho as provided in I.C. § 49–1210(a).[1] Blair Dean, Inc., was a licensed "dealer" of motor fuels as that term was defined in I.C. § 49–1201(1)(d) who between April 1, 1972, and May 24, 1972, was taxed an additional 1½¢ per gallon on motor fuels "received" by it as a result of the State Tax Commission's enforcement of chapter 209 of the 1972 Session Laws on April 1, 1972. The additional 1½¢ tax paid during that period amounted to $12,108.39, according to the stipulation of facts entered into by the parties. It is clear from our prior decision in *American Oil Co. v. Neill*, 86 Idaho 7, 383 P.2d 350 (1963), *reversed*, 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965), that the legal incidence of the motor fuels excise tax imposed by I.C. § 49–1210(a) is upon the licensed "dealer", and not upon the ultimate consumer who uses the motor fuels on the highways of the state of Idaho. As summarized by the United States Supreme Court in the *American Oil Co.* case:

"The trial judge found that the operating incidence of the tax clearly fell on the dealer:

" '[T]he dealer is not in any way required to pass the tax on or collect it

from the consumer, and the ultimate purchaser or consumer has no responsibility whatsoever for payment of the tax. While it may be the overall policy of the state to collect a tax of 6¢ per gallon on all gasoline used to propel motor vehicles over Idaho state highways, the taxable event or transaction is not the use by the local consumer or purchaser, but the "receipt" of the gas by the dealer. It cannot be said under this statute that the licensed dealer is the mere collector of a tax from the purchaser or user * * *.'

"This conclusion was further buttressed by finding that the Idaho administrative interpretation of the statute in the past has been to treat it as a privilege tax upon the dealer.[5]

"[Footnote] 5. Letter from Don J. McClenahan, Assistant Attorney General of the State of Idaho, to Bigelow Boysen, May 9, 1950. The conclusion was reached in this opinion that 'the act places the legal incidence of the tax upon the dealer * * * and not on the vendee or consumer.' A decision by the Comptroller General also agrees with this conclusion. 24 Comp.Gen. 163 (1944).

"On appeal the Idaho Supreme Court left the trial court's conclusions undisturbed. Moreover, the State Attorney General in his brief before this Court expressly states that the tax 'is a privilege tax, the incidence of which falls on the dealer * * *.' This unanimity between the courts of Idaho and its agencies is to us in accord with the literal interpretation of the Act inasmuch as § 49–1210 clearly states that 'each dealer shall pay to the commissioner an excise tax of six cents per gallon on all motor fuels * * *' with no coinciding provision passing the burden of the tax to the purchaser. We

---

1. There is a backup "use" tax imposed by I.C. § 49–1201(2), which apparently was designed to reach and tax motor fuels used within the state of Idaho which for some constitutional or other reason had not been taxed by the basic excise tax imposed upon "dealers" for gasoline first "received" within the state of Idaho. The use tax is not applicable to motor fuels which have been included within the measure of the excise tax provided for in I.C. § 49–1210. *See*

I.C. § 49–1201(2)(a). This tax on the use of motor fuels was no doubt prompted by, and finds its primary application in the situation described in the case of *American Oil Company v. Neill*, 86 Idaho 7, 383 P.2d 350 (1963), *reversed*, 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965). The taxes in question in this case are excise taxes imposed by I.C. § 49–1210(a), and not use taxes imposed by I.C. § 49–1201(2).

therefore give the findings below controlling effect and hold that the incidence of the tax falls on the dealer." 380 U.S. at 456–457, 85 S.Ct. at 1134.

It was because of that determination that the Supreme Court of the United States reversed our decision in *American Oil Co. v. Neill, supra,* and held that to impose the Idaho motor fuels excise tax upon an Idaho licensed "dealer" for a transaction which occurred in the state of Utah violated the due process clause of the United States Constitution.

Having previously concluded that the State Tax Commission could not legally impose the motor fuels tax increase of 1½¢ per gallon until May 24, 1972, we hold that the appellant Blair Dean, Inc., was the person upon whom the legal incidence of that tax was imposed under the statutes as they then existed, and was entitled to a declaratory judgment in its favor, and a refund of all taxes paid under protest between April 1, 1972, and May 24, 1972. *American Oil Co. v. Neill, supra.*

■ The State Tax Commission argues that the economic burden of the motor fuels tax is passed on to the ultimate consumer of the gasoline, who under certain limited circumstances may be entitled to a refund for certain "off highway" and other uses. From this the state argues that it is the user, if anyone, and not the plaintiff Blair Dean who would be entitled to any refund. That argument has been effectively answered by the Supreme Court of the United States in the recent case of *Gurley v. Rhoden,* 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975), in a case involving the effect of the legal incidence of federal motor fuels taxes in the state of Mississippi. The court stated in that case:

"Petitioner's argument can prevail, as he apparently concedes, only if the legal incidence of the excise taxes is not upon petitioner but upon the purchaser-consumer. Our task therefore is to determine upon whom the legal incidence of each tax is rested.

II

"The economic burden of taxes incident to the sale of merchandise is traditionally passed on to the purchasers of the merchandise. Therefore, the decision where the legal incidence of either tax falls is not determined by the fact that petitioner, by increasing his pump prices in the amounts of the taxes, shifted the economic burden of the taxes from himself to the purchaser-consumer. The Court has laid to rest doubts on that score raised by such decisions as *Panhandle Oil Co. v. State of Mississippi ex rel. Knox,* 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857 (1928); *Indian Motocycle Co. v. United States,* 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277 (1931), and *Kern-Limerick v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954), at least under taxing schemes, as here, where neither statute required petitioner to pass the tax on to the purchaser-consumer. See *Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941); *Lash's Products Co. v. United States,* 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251 (1929); *Wheeler Bridge & Supply Co. v. United States,* 281 U.S. 572, 50 S.Ct. 419, 74 L.Ed. 1047 (1930); *First Agricultural National Bank v. State Tax Comm'n,* 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); *American Oil Co. v. Neill,* 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965)." 421 U.S. at 204–205, 95 S.Ct. at 1608.

There is nothing in the motor fuels tax requiring the licensed "dealer" to increase the amount of his price by the amount of the tax. Therefore, we conclude that it is the petitioner Blair Dean, Inc., and not the ultimate consumer of the motor fuel who is entitled to the refund of the illegally imposed motor fuels tax between April 1, 1972, and May 24, 1972. *Gurley v. Rhoden, supra.*

■ The State Tax Commission further argues that the petitioner Blair Dean, Inc., should be denied its right to recover because it did not protest the payment of the taxes, nor did it petition for a refund, and thus did not exhaust its administrative remedies. This argument was not raised by the Tax Commission before the district court, nor was it ruled upon by the district court

in granting summary judgment in the Tax Commission's favor. Furthermore, it is not sustained by the record. The stipulated facts contained in the record disclose that the checks by which appellant Blair Dean, Inc., paid the additional 1½¢ motor fuel taxes as provided in I.C. § 49–1210–12, had inscribed thereon "paid under protest."

█ As for the argument that Blair Dean did not petition for a refund, there is no provision in the motor fuels act for a refund under these circumstances. There are four sections of the motor fuels tax act which authorize deductions or refunds—I.C. §§ 49–1210, 49–1215, 49–1218 and 49–1218a. The exemptions from taxation which those sections authorize are narrowly defined and do not authorize the refund of motor fuels tax because of the illegality of the imposition of the tax. I.C. § 49–1218a specifically requires a claimant for any refund to make a statement, which he shall certify to be true and correct, that, ". . . the motor fuel [upon which the claim is made] has been used by said claimant otherwise than in motor vehicles operated or intended to be operated upon the public highways within the state of Idaho." A reading of I.C. § 49–1218a indicates that it was not intended to encompass claims such as those of Blair Dean, Inc., and a claimant such as Blair Dean, Inc., could not truthfully certify to the requirements of that section. Therefore, we conclude that the payment under protest was sufficient to preserve the rights of the plaintiff Blair Dean, Inc. *Compare, American Oil Co. v. Neill, supra* ; *Gurley v. Rhoden, supra.*

## CLAIM OF V–1 OIL COMPANY

█ Under the facts stipulated to by the parties, V–1 Oil Company was not a licensed "dealer" who paid the excise tax imposed by I.C. § 49–1210 for first "receiving" motor fuels in the state of Idaho. V–1 Oil Company was a retail dealer who purchased motor fuel from other licensed "dealers" as defined in I.C. § 49–1201(1)(d), who had previously paid the excise tax im-

posed by I.C. § 49–1210(a). While the stipulated facts indicate that the economic burden of the tax imposed upon its suppliers was passed on to V–1 Oil, the stipulation further sets out that "from April 1, 1972, through June 30, 1972, plaintiff V–1 Oil Company increased the posted retail pump prices at its retail outlets 1½¢ per gallon," indicating that in all likelihood V–1 Oil Company also passed on the economic burden of the tax. Even assuming that it did not, however, the legal incidence of the tax was not upon V–1 Oil Company, but on its suppliers, and therefore while V–1 Oil Company may have been entitled to a declaratory judgment concerning the legality of the 1½¢ tax increase, it had no claim to a refund of any taxes paid as a result of the invalid imposition of the 1½¢ tax increase from April 1, 1972, through May 24, 1972.

The judgment of the district court, granting summary judgment in favor of the State Tax Commission is reversed, and the cause remanded with directions to enter summary judgment in favor of both plaintiffs V–1 Oil Company and Blair Dean, Inc., declaring the effective date of the increased tax imposed by chapter 209, I.S.L.1972, to be May 24, 1972, and to enter summary judgment in favor of Blair Dean, Inc., for a refund of the additional taxes it was compelled to pay by chapter 209, I.S.L.1972, between April 1, 1972, and May 24, 1972. Costs to appellants.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, District Judge (Ret.), concur.