561 P.2d 1316

**DEPARTMENT OF EMPLOYMENT, Plaintiff-Appellant,**

v.

**ST. ALPHONSUS HOSPITAL, Defendant-Respondent.**

No. 12141.

Supreme Court of Idaho.

March 25, 1977.

R. LaVar Marsh, Deputy Atty. Gen., Wayne L. Kidwell, Atty. Gen., Boise, for plaintiff-appellant.

Raymond D. Givens, Boise, for defendant-respondent.

McFADDEN, Chief Justice.

St. Alphonsus Hospital is a qualified nonprofit organization which has elected to be a cost reimbursement employer under the terms of the Idaho Employment Security Act, I.C. § 72–1349(f). In 1974, two former employees of St. Alphonsus Hospital were determined by the Department of Employment to be eligible for unemployment compensation and they were paid accordingly. The Department later decided that the claimants were ineligible and that payments had been improper, but nevertheless

284

attempted to charge St. Alphonsus for the erroneous payments. After the determination that the payments had been improper, St. Alphonsus sought to obtain credit for the amounts. The Department of Employment refused to allow the credit, holding that a cost reimbursement employer is liable to the Employment Security Fund for overpayments not recovered from the claimants. The Industrial Commission reversed that holding and the Department of Employment appeals. The single issue on appeal is whether under the statute, I.C. § 72–1349 as it was then in effect, a cost reimbursement employer is obligated to reimburse the Employment Security Fund for unrecovered amounts paid out but later determined to be improper. The Idaho Legislature has since amended the statute in question to require cost reimbursement employers to repay the Fund for overpayments. S.L.1976, Ch. 207, § 4.

This court has examined the relevant statutes and concludes that the Industrial Commission was correct in the construction placed on those statutes. Prior to the 1976 amendment, cost reimbursement employers were not obligated to compensate the Employment Security Fund for overpayments.

The decision of the Industrial Commission is affirmed. Costs to respondents.

DONALDSON and SHEPARD, JJ., concur.

BAKES, Justice, dissenting:

I disagree with the majority that I.C. § 72–1349, as it appeared in 1974, does not make cost-reimbursement employers liable for unemployment compensation benefits mistakenly paid. At first blush it would seem unfair to require St. Alphonsus Hospital in this case to be responsible for unemployment benefits which were mistakenly paid to its former employees. However, the effect of the majority's decision will result in these benefits being charged to all the rated [non cost-reimbursement] employers in the state of Idaho who will be forced to pay the bill for St. Alphonsus, which is even more unfair.

The employment security fund is a creation of statutes which provide that all covered employers must contribute to it by taxes, based upon a percentage of their gross payroll. I.C. §§ 72–1315, –1320, –1349(a), –1350, –1351. The percentage which any employer pays is dependent upon his employment history. I.C. §§ 72–1350, –1351. An employer who has had proportionately fewer claims allowed against his account obtains a lower tax rate than does an employer whose employment practices result in a proportionately larger number of claims allowed against his account. I.C. §§ 72–1350(f), –1351(a) (present law); I.C. §§ 72–1351(a)(1), –(5) (1974 law). All of the tax contributions of the various employers comprise the fund from which benefits are paid. I.C. §§ 72–1346, –1349(a). However, cost-reimbursement employers, such as St. Alphonsus Hospital, were not taxed as were other employers, but if they so elected they could agree to reimburse the fund for any contributions which were made by it "which [were] attributable to service in the employ of such organization." I.C. § 72–1349(f)(2)(A)1 (as it existed in 1974). Under that statute the director was to bill each cost-reimbursement employer for benefits extended as a result of claims which had been allowed in favor of the former employees of the cost-reimbursement employer.

When a claim is allowed to a former employee of a cost-reimbursement employer, the payments are made from the fund which has been amassed from the contributions of the other rated employers in the state of Idaho because there is no other source for the payment. If the cost-reimbursement employer is not required to reimburse the fund for the amount of benefits paid to its employees, then the rated employers in the state will pay for the benefits which were paid to St. Alphonsus' employees, since St. Alphonsus, being a cost-reimbursement employer, does not contribute to the employment security fund. I.C. §§ 72–1315A, –1349(f) (1974 law).

In this case after the claims were filed St. Alphonsus would have been notified of the

initial determination that the two claimants were eligible for benefits. *See* I.C. §§ 72–1323, –1368(e). Later, the Department of Employment, for reasons which do not appear in the record, redetermined that benefits had been erroneously paid. St. Alphonsus Hospital had not protested the original determinations of eligibility, but there is nothing in the record to indicate that it had any reason to know of grounds for protest at that time.

However, St. Alphonsus promptly protested the billing for those payments which had been made when it received the quarterly billing which the Department of Employment regularly gave to cost reimbursement employers. *See* I.C. § 72–1349(f)(2)(D) (as it existed in 1974). It was this protest by the hospital to the quarterly billing that led to the present dispute. So far as can be determined from the record, there is no indication that either the Department or the hospital failed to exercise due diligence in considering the original claims. Thus, if the overpayments cannot be collected from the two claimants, one of two innocent parties is going to have to bear the burden of those overpayments. Either the payments will be charged to St. Alphonsus Hospital, or they will have to be paid out of the employment security fund which was contributed to by the other rated [non cost-reimbursement] employers in the state of Idaho. Under these circumstances, it then becomes much clearer what the legislature intended when it provided in I.C. § 72–1349(f)(2)(A)1 that:

> "[T]he director shall bill each nonprofit organization . . . which has elected to make payments in lieu of contributions for an amount equal to the full amount of regular benefits plus one-half (½) of the amount of extended benefits paid during such quarter or other prescribed period *which is attributable to service in the employ of such organization*." (Emphasis added).

The legislature must have intended that benefits paid to former employees of a cost-reimbursement employer, even though mistakenly paid, should be chargeable to that employer's account, since to do otherwise would thrust that burden upon all the other rated employers who were compelled by law to contribute to the employment security fund from which the benefits to the cost-reimbursement employers' prior employees were advanced.

The 1976 amendment to I.C. § 72–1349, contained in the 1976 Session Laws, ch. 207, § 4, more clearly spells out what I view to already have been the legislative intent expressed in I.C. § 72–1349. *Compare V–1 Oil Co. v. State Tax Commission*, 98 Idaho 139, 559 P.2d 756 (1977). It is even clearer now that the legislature intended that cost-reimbursement employers be required to reimburse the fund for benefits erroneously paid to their former employees.

BISTLINE, J., concurs.