567 P.2d 423

A. E. WARE and Ruby L. Ware, husband and wife, Gerald O. Talbot and Jean Talbot, husband and wife, Charles Robertson and Lois Robertson, husband and wife, Herman Vogt and Leona Vogt, husband and wife, and Harry C. Skinner and Gertrude Skinner, husband and wife, Plaintiffs-Appellants and Cross-Respondents,

v.

IDAHO STATE TAX COMMISSION, Defendant-Respondent and Cross-Appellant.

Dorothea L. BICKMORE, Mable S. Clore and Henry C. Buchanan, Intervening Plaintiffs and Appellants,

v.

IDAHO STATE TAX COMMISSION, Defendants and Respondents.

No. 12008.

Supreme Court of Idaho.

July 11, 1977.

Dean E. Miller and Gerald L. Weston, Gigray, Miller, Downen & Weston, Caldwell, for appellants and cross-respondents.

Theodore V. Spangler, Jr., Deputy Atty. Gen., Wayne L. Kidwell, Atty. Gen., Boise, for respondent and cross-appellant.

BISTLINE, Justice.

We are asked to review the record below on two separate appeals, both taken from a final judgment which was entered following the presentation of motions for summary judgment. The defendant in the proceedings below, Idaho State Tax Commis-

sion, appeals a $90.00 judgment, for tax refund, awarded against it in favor of the original plaintiffs who brought the action A. E. and Ruby Ware, Gerald and Jean Talbot, Charles and Lois Robertson, Herman and Leona Vogt, and Harry C. and Gertrude Skinner. Of the $90.00 awarded, the Talbots received judgment for $10.00; each of the other couples recovered $20.00.

Other plaintiffs in the action, who became such by intervention, were Dorothea L. Bickmore, Mable S. Clore, and Henry C. Buchanan. The final judgment in the trial court denied them any relief on their claims on the basis that they, unlike the original plaintiffs, had not filed for the refund involved here. The intervening plaintiffs appeal from the judgment insofar as it denied them any relief. The plaintiffs also contended in the trial court that they were entitled to maintain the action as a class action, alleging that they brought "this action for themselves and for and on behalf of all other persons similarly situated." The final judgment denied any right in any of the plaintiffs to maintain the suit as a class action. All plaintiffs join in appealing from that determination.

The entire controversy arises out of, and our concern here is with, that portion of the tax law which had for its purpose to give a nominal tax benefit to older citizens of this state whose earned income is nominal, or even nil, but who nonetheless are required to pay sales tax on their purchases. Because the purchases of such persons are more often than not groceries, the direct tax credit which the law provides, and which is herein involved, is commonly referred to as either the sales tax credit or the grocery tax credit. Where it exceeds the taxpayer's tax, it may become a refund.

The Code section around which this controversy revolves is I.C. § 63–3024(d). The immediate problem resulted from an amendment to this section which was passed by the 1971 Legislature.[1] The prob-

1. "(d) A credit shall be allowed to persons other than corporations against taxes due under the Idaho Income Tax Act. This credit shall be in the amount of ten dollars ($10.00) for each personal exemption for which a deduction is permitted by section 151(b) and (e)

lem is confined to that one year. As this statute read *prior* to the 1971 amendment, the grocery tax credit, against taxes due under the income tax laws of Idaho, was allowable to any and *all* Idaho individual taxpayers—the same to be at the rate of $10.00 per each personal exemption, as claimed on the taxpayer's Idaho income tax return. A 65-year-old taxpayer, however, whose income was such that he used none, or less than all, of his one or more $10.00 credits, upon application, could gain a refund of the credit, or portion thereof, which was not used as an offset against any income tax owed. To illustrate how it was prior to 1971, a 65-year-old taxpayer, with earned income making him liable to payment of state income tax in the amount of $27.00, and having three personal exemptions of $10.00 each, would apply $27.00 of his $30.00 credit to pay his tax, and gain a $3.00 refund. If his income tax exceeded $30.00, he would have a $30.00 offset against it, but he would get no refund.

The language of the statute, as amended in 1971, footnote 1, *supra*, however, states that the 65-year-old taxpayer, for that year, is entitled to a refund of $10.00 for each of the allowable exemptions. All individual taxpayers, whether over or under 65 years of age, were entitled to a credit of $10.00 for each of their personal exemptions, but the 65-year-old taxpayer, could have that credit, and at the same time obtain a refund in the amount of $10.00 for each of the personal, 65-or-over, and blindness and dependents' exemptions to which he was entitled.

of the Internal Revenue Code, as that section appeared on December 31, 1964, if such deduction is claimed on the taxpayer's Idaho income tax return. If the credit is not claimed for the year for which the individual income tax return is filed, the right thereafter to claim such credit shall be forfeited. No credit may be claimed for an exemption which represents a person who has himself filed an Idaho income tax return claiming a deduction for his own personal exemption, and in no event shall more than one (1) taxpayer be allowed a credit for the same exemption. A resident individual of the state of Idaho who has reached his sixty-fifth (65th) birthday before the end of his taxable year ~~and has been allowed none, or less than all, of the credit provided by this subsection~~

# PART I. JUDGMENT FOR THE ORIGINAL PLAINTIFFS.

■ On its appeal the primary contention of the Tax Commission is that no such benevolence was intended by the 1971 Legislature, and that the judgment for the original plaintiffs should be reversed. The Tax Commission argues here, as it did to the trial court, that the evidence "establishes the existence of a simple clerical error on the part of the legislature." The Tax Commission assigns as judicial error the failure of the trial court to agree with that Commission contention. The trial court's conclusion of law was:

"Idaho Code 63–3024(d), as it was in effect for the tax year 1971, contains no ambiguity or obvious errors which can be interpreted or construed by this Court or which would be subject to administrative interpretation or construction by the defendant, STATE TAX COMMISSION."

The Tax Commission concedes that there is no ambiguity in the language of the statute as amended. It argues here, as it did below, that the courts should remedy what it decries as the hurried-up last-minute mistake of the legislature, citing *Keenan v. Price*, 68 Idaho 423, 195 P.2d 662 (1948), for the proposition that "Obvious clerical errors or misprints will be corrected or words read in if the omission or error is plainly indicated and the true meaning is obvious, and the operation of the enactment would be otherwise defeated." Relying heavily upon that case, the Tax Commission argues that:

~~shall,~~ shall be entitled to a refund equal to the amount of ten dollars ($10) for each personal exemption for which a deduction is permitted by section 151 of the Internal Revenue Code, as that section appeared on December 31, 1964, and upon making application therefor at such time and in such manner as may be prescribed by the state tax commission, be entitled to a payment out of the state refund fund ~~in the amount of the credit, or portion of the credit, not otherwise allowed by this section.~~" [Underlining indicates added material; struck type indicates deleted material.] 1971 Idaho Sess.Laws, ch. 302, § 2, p. 1242.

"The omission by the 1971 legislature of the words 'and has been allowed none, or less than all, of the credit allowed by this subsection', renders the section irrational. The $10 tax credit is intended by the Legislature to be a means of refunding to taxpayers sales taxes paid on groceries. But, the legislature knew that many elderly people who necessarily purchase groceries do not earn enough money to be required to file or pay individual income taxes and were, as a result, denied the benefit of the tax credit. The Legislature therefore, provided that these individuals should be granted a $10 cash refund. In other words, the refund was provided to remedy an unfair discriminatory effect against elderly people with little or no income. The construction urged by the Plaintiffs in this case in relation to 1971 would have exactly the opposite effect. They argue that all persons over the age 65 should be entitled to the refund regardless of whether or not they were able to take advantage of the tax credit."

■ We can readily agree that the legislature knew that many elderly people who have to buy groceries, and pay sales tax thereon, do not earn enough money to have taxable income. Indeed, many of the elderly do not earn any money; many are dependent on social security payments, and there has been many a hue and cry raised against these persons paying back 3% on what little they receive each month. The legislative intent, as discerned from the plain language of the amended statute, and as held by the trial court, was that all 65-year-old persons, whether bringing in earned income or not, should be refunded $10.00, $20.00, or $30.00 of their sales tax

payments. It has all the aspect of of humanitarian legislation, and we are not at all persuaded by the argument of the Commission that we should hold that the legislature acted irrationally. Nor can we agree with its contention that "House Bill 309 on its face has every appearance of clerical error." It has no objective appearance of clerical error. We have painstakingly reviewed the official journals of both Houses, but find no evidence to substantiate the Commission's argument that there was a clerical error on the part of the legislature. The bill is easily understood, and whether it was or was not sound for the legislature to have granted this refund to the senior citizens of this state is not for the courts to say. *Day Mines v. Lewis*, 70 Idaho 131, 212 P.2d 1036 (1949); *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964); *V–1 Oil Co. v. State Tax Commission*, 98 Idaho 140, 559 P.2d 756 (1977).

■ The Tax Commission, in essence arguing that the legislature knew not what it was doing in passing the 1971 amendment, turns to the adoption of its own Regulation 24(f), as being controlling over the plain legislative language. This regulation was adopted by the Commission on June 28, 1971, supposedly to implement the provision of the statute which stated that refunds were available to those qualified "upon making application therefor at such time and in such manner as may be prescribed by the state tax commission." Bending the legislative enactment to its own fancy as to what the legislature should have done, the regulation promulgated by the Commission stated this:[2]

"The refund will be computed by multiplying the number of personal exemptions to which the individual is entitled

2. The full text of Regulation 24(f) reads:

"(f) Tax Credit.—The tax credit allowed by Idaho Code sec. 63–3024(d) amounts to $10 for each person claimed as a personal exemption. The credit, or any portion thereof, may be claimed only once for each individual on any combination of income tax returns or refund returns. If none or less than all of the tax credit has been used to offset the income tax due from an individual who has been a full-year resident of Idaho and has reached

his 65th birthday before the end of his taxable year, a refund may be claimed. The refund will be computed by multiplying the number of personal exemptions to which the individual is entitled by $10 and subtracting from the result any amount used to offset income tax due. If the full $10 per person has been used to offset the income tax due, no claim for refund will be accepted." [Adopted June 28, 1971.]

by $10 and subtracting from the result any amount used to offset income tax due. *If the full $10 per person has been used to offset the income tax due, no claim for refund will be accepted."* (Emphasis added.)

The argument with which we are presented is bottomed on the premise that compliance with the Idaho Administrative Procedures Act, in particular I.C. §§ 67–5217 and –5218, without any subsequent legislative disapproval, produces a regulation with the effect of statutory law. The Commission is asking this Court to take note of the construction that it placed on the 1971 amendment, and to be persuaded thereby. However, as we see it, the Commission did not construe the statute, but perceived that the legislature had in the opinion of the Commission acted with exceeding generosity in favor of the senior citizens who still earned some, if not much, income, and the Commission then rectified this magnanimity by promulgating a regulation which nullified and ignored the positive language of the statute. Whether or not an administrative construction of legislative language is correct is ultimately a question for judicial decision, especially where, as here, the language is devoid of any ambiguity. *Idaho Compensation Co. v. Hubbard,* 70 Idaho 59, 211 P.2d 413 (1949); *C. H. Leavell & Co. v. Oklahoma Tax Comm'n,* 450 P.2d 211 (Okl.1968).

In 1972 the Legislature once more amended the statute in question, again providing that the tax credits made available to all taxpayers would become refunds for those 65 or older only where none or less than all of such tax credit had been used as offset against income tax. The Commission invites our attention to the title of the 1972 amending bill which recites that the amendment to the statute has for a purpose "Clarifying said Section in Accordance with Previous Intent. . . . " Assuming the validity of the Commission's argument that the 1971 Legislature enacted legislation which accomplished other than what it had in mind, and that the 1972 Legislature was disposed to remedy the situation thus created, this gratuitous statement incorporated into the title, and strangely found nowhere

in the body of the amendment, can not retroactively compel the district court or this Court to a decision that the Legislature in 1971 did not mean to say what it so clearly did say. There is no language in the body of the legislation enacted in 1972 that affected the tax year 1971. Were it otherwise, there might result a very serious constitutional question, but the Legislature did not even attempt to do so, specifically providing in the 1972 amendment's emergency clause that it was effective back to January 1, 1972, thus effective for the tax year 1972 only. This is a practice which has gained recognition. *Herndon v. West, supra.*

The trial court properly entered judgment for the original plaintiffs. The judgment, as to each respective marital community, was that amount which had been claimed by each when their 1971 income tax returns were filed. That the original plaintiffs were somewhat confused in trying to file for a claim on a form which allowed provision for a refund only where not all of the credit was used, is evidenced by the fact that the refund claims of the original plaintiffs were, in each case, less than that to which these taxpayers appeared to be entitled. The Wares, for instance, claimed $20.00, as being their "Net Refundable Unused Sales Tax Credit." This figure was apparently arrived at by subtracting the figure on line 13 from the figure on line 14. Line 14 was the sales tax credits for claimants over 65 years, and on this line the Wares entered the figure of $40.00, which would represent two exemptions each. No figure was entered on line 13, from which it would follow that the Wares did not arrive at their claim of a $20.00 refund by subtracting zero from $40.00. Logically, it would appear that the Wares somehow knew that they were entitled to a sales tax refund of some amount, and in the confusion asked for $20.00 whereas they should have been asking for $40.00. Plaintiffs Robertson used the form to ask for a refund of $20.00, rather than the $40.00 to which they were entitled; in their case it appears that they may have labored under the misapprehension that the amount of the tax

credit had to be deducted, but this can not be gleaned from the form which they filled out, as they merely claimed $20.00, with no filling out of the form so as to indicate how that figure was reached, saying only, "See attached statement," which statement was not incorporated into the record.

## PART II. THE CLAIM OF THE INTERVENING PLAINTIFFS.

These taxpayers were in a different position from the original plaintiffs, in that none had filed any claims for refunds, in which regard the trial court made a specific finding. As to these intervening plaintiffs, the trial court's Conclusions of Law were these:

"Such individual [the 65 year old taxpayer] may claim the refund regardless of whether he has claimed any or all of the direct tax credit permitted by Idaho Code 63–3024(d) during the tax year 1971.

.     .     .     .     .

"In order to obtain a refund, the taxpayer must make a claim for refund in the manner prescribed by the defendant, STATE TAX COMMISSION, OR IN THE ALTERNATIVE, TAKE SOME AFFIRMATIVE ACTION TO OBTAIN SUCH REFUND."

Plaintiffs on this appeal challenge those conclusions, and urge that the same can not be sustained in view of the Findings of Fact made by the trial court, based upon statements and admissions accumulated in the record on discovery proceedings. The findings are:

That the manner of making application for 1971 refunds was prescribed by the State Tax Commission by the taxpayer filling out and filing the Tax Commission's Form 24.

That Form 24, as circulated by or under the direction of the Commission was designed to allow a claim for unused sales tax refund *only* in those instances where none, or less than all, of the income tax personal exemption credit had been used as offset.

The plaintiffs argue that such findings of fact preclude the above set forth Conclu-

sions of Law, contending that the Tax Commission is estopped from relying upon failure to submit a claim as a defense. The Tax Commission falls back upon *State v. Adams*, 90 Idaho 195, 409 P.2d 415 (1965), for the proposition that "Equitable estoppel may not ordinarily be invoked against a governmental or public agency functioning in a sovereign or governmental capacity." The Commission cites a number of cases from other jurisdictions, particularly *Langford v. Atens*, 325 Mich. 585, 39 N.W.2d 82 (1949), for the proposition that the collection of taxes is a governmental function, and a collecting officer or agent cannot, by his mistake or misinformation, work an estoppel against his government employer.

With commendable candor the Tax Commission concedes that the authority found by it had for the most part to do with estoppel in a tax-collection situation, not with a taxpayer's pursuit of his right to a refund. Observing that refund cases are "somewhat more sparse," the Commission cites and quotes from *Armstrong v. Driscoll Constr. Co.*, 107 Colo. 218, 110 P.2d 651 (1941). In that case a gasoline tax was paid, refund under an exempting statute was claimed after expiration of the 60 days allowed by the legislature, but the claimant maintained that he had been misled by an alleged practice of the state treasurer not to insist on the mandatory 60-day time limitation. The court there observed that the treasurer had no authority to make such a rule of practice, if such were the case.

■ The Commission and the taxpayers both rely with confidence upon *Market Street Ry. v. California State Bd. of Equal.*, 137 Cal.App.2d 87, 290 P.2d 20 (1955). The Commission cites it for this proposition:

" 'The State Board cites many cases from this and other jurisdictions to the effect that an estoppel based on reliance upon an erroneous construction of the statute by an administrative ruling will not lie against the government, particularly in tax matters. As a general proposition, this is sound law. Obviously, a tax administrator should not be permitted by an

erroneous ruling to exempt a taxpayer from the obligation to pay taxes.'" 290 P.2d at 28.

The taxpaying plaintiffs cite it for this: " 'Whether an estoppel exists against the government should be tested generally by the same rules as those applicable to private persons. The government should not be permitted to avoid liability on tactics that would never be countenanced between private parties. The government should be an example to its citizens, and by that is meant a good example and not a bad one.'" 290 P.2d at 28.

The two propositions are not mutually exclusive. Where the legislature has imposed a tax liability, an erroneous administrative interpretation of the statute ought not to erase the taxpayer's liability. *Market Street Railway* does say as much. But, similarly, governmental liability ought not to be avoided where the government's conduct would not be countenanced as between private parties. *Market Street Railway* also teaches that. What we review today is neither the first nor the second, but something of a different nature. None of the plaintiffs seek to avoid the payment of any tax upon the predicate that they were misinformed; nor do they seek to impose a liability on the Idaho refund fund by reason of having been misinformed. The claim is simply that the 1971 Legislature *awarded* them a small measure of sales tax relief, but the Commission has taken it upon itself to nullify the award.

The statute declared the entitlement. It further declared that the taxpayer wanting that benefit was required to make "application therefor at such time and in such manner as may be prescribed by the state tax commission." Where the State Tax Commission, by the passage of Regulation 24, and the promulgation of Form 24, admittedly foreclosed any number of eligible claimants from requesting the refund, the Tax Commission ought not to be heard insisting, as a matter of defense, that such claimants have not met the conditions precedent to making a claim. Not only did the Commission fail to fulfill its statutory obligation of providing the mechanics of making application, which would ordinarily be fatal to such a defense, but it overtly represented the law as being other than it actually was. In *Market Street Railway, supra,* the statement is made that: "An administrative regulation which is in conflict with the statute is invalid and the government is not bound thereby." The regulation and the form both contravene the express language of the statute, and the taxpayer can not thus be denied the payment of the entitlement which the Legislature has voted him. This being so, whatever terminology is used should be of no moment. However, the controversy need not be determined on the basis of declaring an estoppel.

In actuality, a refund was awarded to the 65-year-old taxpayer, and the Tax Commission fell short in carrying the mantle of responsibility placed upon it by the Legislature. It could just as easily be said that until the Tax Commission establishes a fair and informative procedure to taxpayers for making application for the 1971 tax refunds, the awards established by the Legislature in favor of these people remain to be fulfilled.

The record before us shows that the Commission, faithful to its own determination of what the 1971 Legislature should have done, refused any refund claims such as those which were here found valid by the trial court. It admits that it had no intention of allowing any such claims. In these circumstances, we find that the requirement of the filing of a claim for the refund was the requirement of a useless and futile act. "The law does not require useless acts from litigants as prerequisites to seeking relief from the courts." *Van Gammeren v. City of Fresno,* 51 Cal.App.2d 235, 124 P.2d 621, 623 (1942). *And see, Gillam v. Roadway Express, Inc.,* 1 Ohio App.2d 548, 206 N.E.2d 34, 35 (1965). It is a firmly entrenched proposition of jurisprudence that the performance of a condition is *excused* when the nonperformance is brought about by the actions of the adverse party, and this is so even where the condition precedent in

question is required by statute. 1 Am. Jur.2d 608, Actions § 80; 1 C.J.S. Actions § 25b, p. 1066. The right of the intervening plaintiffs to obtain an award of the sales tax refund should not be prejudiced by the course followed by the Tax Commission. The intervening plaintiffs, respectively, are entitled to judgment in the amount of the refunds to which they are entitled, respectively.

PART III. THE CLASS ACTION ISSUE.

█ In addition to the findings of the trial court hereinabove set forth, apropos to the class action issue, the court also found:

> Some of the named plaintiffs and some members of the plaintiffs' class have filed the Tax Commission's Form 24 applying for a refund and have been denied by the Commission. Other named plaintiffs and other members of plaintiffs' class have made no application on Form 24, or taken other affirmative action to claim the refund.
>
> That approximately 27,980 people who have filed an Idaho income tax return would have been entitled to claims for refunds if properly requested.

The trial court in its conclusions of law, as set out above with regard to the intervening plaintiffs, erroneously held that any taxpayer desiring a refund was obligated to make a claim for refund in the manner prescribed by the Tax Commission, or alternatively to take some action to obtain the refund. Based on that conclusion, which would apply to the 27,980 taxpayers above mentioned, the trial court in turn reached the further conclusion that those taxpayers "should be excluded from the plaintiffs' class," and that "the remaining members of plaintiffs' class are too few to justify maintenance of the action as a class action," upon which conclusion the final judgment denied plaintiffs' prayer for class relief.

Our holding in favor of the intervening plaintiffs is equally applicable to those other 27,980 members of plaintiffs' class. This holding necessarily results in expanding the size of plaintiffs' class. It follows, therefore, that the trial court will allow plaintiffs the opportunity to pursue the class action aspect of their complaint. Questions which might arise concerning fulfillment of the other requirements for a class action, I.R.C.P. 23, are not before us, and we offer no comment, as these will be fully considered by the trial court on remand.

The judgment for the sum of $90.00 in favor of the original plaintiffs is affirmed; the judgment denying any relief to the intervening plaintiffs is reversed and remanded with directions to the trial court to take such further evidence as may be necessary for the entry of a proper judgment in favor of those plaintiffs; the judgment denying class relief is reversed and remanded for further proceedings consistent with this opinion. Costs to appellants.

McFADDEN, C. J., and DONALDSON and BAKES, JJ., concur.

SHEPARD, Justice, concurring in the conclusion in part and dissenting in part.

I concur in the conclusion reached except as to that portion relating to the class action issue. As to that issue I would affirm the trial court in its judgment denying class action relief.